**RUSSELL'S OLD TRADING POST, INC., Plaintiff,**

v.

**UNITED STATES of America, ex rel. UNITED STATES DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE; DIVISION OF NUTRITION/WIC, Indiana State Board of Health, Defendants.**

No. S91–581.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 5, 1992.

Alan F. Hizer, Winamac, Ind., Frank E. Tolbert, Logansport, Ind., for plaintiff.

Clifford D. Johnson, Asst. U.S. Attys. Office, South Bend, Ind., Deborah E. Albright, Atty. General's Office, Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is now before this court on a Verified Motion for Preliminary Injunction. This court has jurisdiction over this matter under 7 U.S.C. § 2023(a). An evidentiary hearing was held on January 8, 1992.

### I.

A letter dated January 9, 1991 was sent by the Indiana State Board of Health to Russell's Trading Post, Inc. ("Russell's") advising Russell's that its "authorization to participate in the Indiana WIC Program is being terminated pursuant to IC 4–21.5–3 and 7 CFR 246.12." That same letter advised that being disqualified from the WIC program "may result in withdrawal of authorization to participate in the Food Stamp Program pursuant to 7 CFR Section 278.-1(o)(1) of Food Stamp Program regulations."

The plaintiff appealed the decision to terminate it from the Indiana WIC Program. An evidentiary hearing was held before an Administrative Law Judge ("ALJ") on April 4, 1991. The ALJ concluded in his Findings and Order of May 23, 1991 that regulations of the WIC Program had been violated and that Russell's should be excluded from the WIC Program for a period of one year beginning May 31, 1991. The State Health Commission adopted the ALJ's decision and entered a final order on June 19, 1991. Russell's did not challenge that decision. Thus the issue as to whether there was a WIC violation is closed. This court will not review that determination.

In a letter dated July 22, 1991, the United States notified Russell's of its determination to withdraw Russell's from participation in the Food Stamp Program. The same letter advised Russell's of the review process it could pursue. The plaintiffs sought review and a hearing was set before Richard J. Havnen, an Administrative Review Officer, on September 17, 1991. Following that hearing, a letter dated September 19, 1991 notified Russell's that the Food Stamp withdrawal action would become "effective thirty (30) days after your receipt of this letter." The plaintiff was also informed of its right to judicial review, and the plaintiff has chosen to appeal the Administrative Review Officers decision to this court.

### II.

If it were possible for this court to write on an equitably clean slate and act as a historic chancellor in equity, it would undoubtedly determine that the equities favor the owners and operators of Russell's, a small, country grocery store. However, it is not possible; things are never so simple.

Instead, this court must begin with the major premise that legislatures can attach very elaborate conditions regarding the expenditure of public funds. *See e.g., Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (upholding a Missouri statute that banned the use of public facilities and public employees to perform nontherapeutic abortions).

This court does not doubt that the bureaucratic maze confronting the owners of this small, country grocery store is overwhelming. However, the Congress of the United States has a perfect right under Article I of the Constitution of the United States to create the bureaucratic maze that characterizes the expenditures of public funds for the various aspects of the Food Stamp Program. Furthermore, the Congress and its bureaucratic agencies have the power to take back anything they give out so long as established procedures are followed. Any arguments to the contrary were laid to rest long ago. *See, Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

In his book, *Gunning for Justice*, Gary Spence, the great and flamboyant, western, trial lawyer wrote that appellate courts are "cold." Maybe so. The same may also be said for state and federal bureaucracies. However, it is not for this court to pass judgment on the wisdom of the actions taken against this grocery store and its owners.

A proper understanding of the limits of federal judicial power under Article III of the United States Constitution is an essential backdrop to the decision in this case. Under our system of administrative law and judicial review of administrative decisions, the initial policy decision to act must be left with the state and federal bureaucracies. As the statutes and regulations in question are constitutional, it is only in a very narrow and precise way that those who disagree with the administrative agency's decision can be successful in challenging such decisions in either state or federal courts. For this court to change or modify the actions taken against Russell's would constitute the kind of judicial activism that this court and others of like mind have long abhorred. While the result here is an unfortunate one, in the opinion of this court, it is beyond the proper scope of this court's authority to attempt to correct it. Justice Frankfurter was often quoted to the effect that there is not a judicial remedy for every ill in society. He was quite correct, and this case illustrates that idea.

Thus, with the greatest reluctance, this court must most respectfully decline to intervene in this administrative process by means of an injunctive command to disrupt the *present* status quo. For the reasons stated below, the plaintiff's request for a preliminary injunction is DENIED.

### III.

To obtain preliminary injunctive relief, the plaintiff must establish (1) "irreparable injury" and (2) a "likelihood of prevailing on the merits." 7 U.S.C. § 2023(a). All parties agree that absent injunctive relief, the plaintiff will suffer "irreparable injury." *See, e.g., De La Nueces v. United States*, 778 F.Supp. 191 (S.D.N.Y.1991); and *Barbosa v. United States*, 633 F.Supp. 16 (E.D.Wis.1986). Thus, the only issue this court need address is whether the plaintiff is likely to prevail on the merits. To that end, this court turns to the applicable statute, 7 CFR § 281.1(n) [1]

This court is limited to a *de novo* review of Russell's termination from the Food

---

**1.** The relevant provisions of 7 CFR § 281.1(n) provide:

(1) FNS shall withdraw the Food Stamp Program authorization of any firm which is disqualified from the WIC Program based in whole or in part on any act which constitutes a violation of that program's regulation and which is shown to constitute a misdemeanor or felony violation of law, or for any of the following specific program violations:

. . . .

(vii) Charging for items not received by the WIC customer. . . .

(2) FNS shall not withdraw the Food Stamp Program authorization of a firm which is disqualified from the WIC Program unless prior to the time prescribed for securing review of WIC disqualification action, the firm was provided notice that it could be withdrawn from the Food Stamp Program based on the WIC violation. . . .

Stamp Program. In this case that requires revisiting the two factual determinations made by the administrative agency:

(1) The plaintiff's WIC violation fell within the categories set out in 7 CFR § 281.1(n)(1) requiring mandatory suspension; and

(2) The plaintiff received notification that a WIC violation might result in its being withdrawn from the Food Stamp Program as required by 7 CFR § 281.1(n)(2).

The ALJ determined that Russell's charged the WIC program for food which the participant did not accept. (ALJ's Findings and Order of May 23, 1991, page 6). This violation is specifically listed in 7 CFR § 281.1(n)(1)(vii).

The plaintiff argues that it did not receive adequate notice because the January 9, 1991 letter it received from the Indiana State Board of Health misled Russell's to believe that withdrawal from the Food Stamp Program was entirely discretionary and incorrectly cited the statute. For the following reasons, this court is not persuaded by the plaintiff's arguments.

 The statute itself only requires notification that a WIC violation "could" effect food stamp participation. 7 CFR § 278.1(n)(2). The January 9, 1991 letter indicated that "disqualification from WIC *may* result in withdrawal of authorization to participate in the Food Stamp Program." (emphasis added). At least one other court has found this to be sufficient notice. *De La Nueces*, 778 F.Supp. 191. Given the statutory language, this court must agree with the *De La Nueces* court's conclusion.

■ Furthermore, this court is not persuaded by the argument that the plaintiff received improper notice because the January 9, 1991 letter incorrectly cited the relevant CFR provision. The regulation requires that a firm be notified that it "could be withdrawn from the Food Stamp Program based on the WIC violation" and that such notice be made "prior to the time prescribed for securing review of WIC disqualification action." 7 CFR § 281.1(n). The January 9, 1991 letter cited 7 CFR § 278.1(*o*)(1) which was the proper cite for the 1990 edition of the CFR. In the 1991 edition of the CFR the provision was redesignated 7 CFR § 278.1(n)(1). At the time notice was required to be given, the citation provided was correct according to the CFR edition then available. As a result, this court cannot say that the plaintiff was prevented from ascertaining the applicable law.

## IV.

Therefore, this court finds that the plaintiff has not met its burden of proving a likelihood of success on the merits in this case, and plaintiff's request for a preliminary injunction is DENIED. Each party will bear its own costs. The Clerk shall enter judgment accordingly. IT IS SO ORDERED.