**EAST FOOD & LIQUOR, INC., an Illinois corporation, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE, Defendants.**

**GARDEN FOODS, INC., an Illinois corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Nos. 93 C 3217, 93 C 6078.

United States District Court, N.D. Illinois, E.D.

Nov. 9, 1993.

Bernard M. Ellis, Robert H. Aronson, Chicago, IL, for plaintiffs.

James John Kubik, Brian R. Havey, U.S. Atty's. Office, Chicago, IL, for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

These two cases present similar scenarios: a retail store was suspended from the WIC program by a State of Illinois proceeding. The United States Department of Agriculture Food and Nutrition Service (FNS) thereafter suspended the store from the food stamp program for the same period, the store lost an administrative appeal and it now seeks judicial determination of the food stamp program suspension. The government has filed a motion for summary judgment in *East Food & Liquor, Inc.,* (East Food). In *Garden Foods, Inc.* (Garden Foods) plaintiff seeks a stay of the suspension pending trial before this court.

Some explanation of the programs is necessary for an understanding of the issues here. The WIC (Women, Infants and Children) program was created as a special food program, supplemental to the food stamp program, to provide highly nutritional foods to pregnant, postpartum and breast-feeding women. It is administered in Illinois by the State of Illinois Department of Public Health, and charges leading to a store's possible disqualification from the WIC program are processed through state administrative proceedings which provide for a full due process hearing. 72 C.F.R. § 246.18.

The food stamp program is administered by FNS, and charges leading to possible disqualification from the food stamp program are processed through FNS administrative proceedings—far less expansive than WIC hearings. Pursuant to 7 U.S.C. § 2021, FNS, acting for the Secretary of Agriculture, may disqualify a store for a first violation for six months to five years or, if it is determined that a disqualification would cause hardship to food stamp households, may impose a civil penalty of up to $10,000 for each violation. If a store is disqualified or subjected to civil penalties and the sanction is upheld after administrative review, the store can obtain in federal court a *de novo* trial, in which the court makes its own determination of whether or not there have been violations but does not second-guess the Secretary on sanctions, so long as they are authorized. *McGlory v. United States,* 763 F.2d 309, 311 (7th Cir.1985).

The Secretary has promulgated regulations to carry out the statutory mandate. The issues here arise from the interaction between those regulations and both the WIC program and the food stamp program statutory provisions. The federal regulation, 7 C.F.R. § 278.1(m), provides for disqualification from the food stamp program upon disqualification from the WIC program for certain specified violations if the store was provided timely notice during the WIC program violation proceeding that it could be withdrawn from the food stamp program based on the WIC violation. 7 C.F.R. § 278.6(f) authorizes the imposition of a civil money penalty in certain circumstances, but it is unclear, at least to this court, whether or not this option is available when the disqualification is mandated by 7 C.F.R. § 278.1(m).

The circumstances here are not dissimilar from those in several reported and unreported cases, in all of which the courts have upheld the administrative disqualification. *Rahim v. United States,* 805 F.Supp. 676 (E.D.Wisc.1992); *Russell's Old Trading Post, Inc. v. United States,* 783 F.Supp. 395 (N.D.Ind.1992); *DeLaNueces v. United States,* 778 F.Supp. 191 (S.D.N.Y.1991); *Davis v. United States,* No. 91 C 1390 (E.D.Wisc. 8/19/92); *Jumbo Food & Liquor, Inc. v. United States,* No. 93 C 3180 (N.D.Ill. 6/23/93). Both stores here were cited for WIC violations. In *Garden Foods,* plaintiff alleges that he relied upon advice of counsel to concede one violation of two cited by the state authorities in return for a $2500 fine and a one-year disqualification from the WIC program, even though the violations did not in fact occur. It was unaware that disqualification from the WIC program would lead to disqualification from the food stamp program. In *East Food,* plaintiff contends that the Secretary had a duty to consider hardship to food stamp households and failed to do so and, in any event, it was entitled to an independent determination whether or not there had been violations and that the state

proceeding, for that matter, never did establish that there had been violations of the food stamp program.

There is in at least one of these and in other cases a recurring theme. Participation in the WIC program is apparently not as economically important to many stores as participation in the food stamp program. A store charged with a violation of the WIC program accepts a disqualification sanction rather than contesting it, not realizing that its food stamp program participation will, as a matter of course, terminate for the same period. When it does realize the consequences it wants to start over. 7 C.F.R. § 278.6(f) does require FNS to notify the store during the WIC proceedings that the store could be withdrawn from the food stamp program based on the WIC violation, and both stores were so notified here. Perhaps FNS should be more forceful and explicit in describing the impact of a WIC violation—if the violation is serious enough the food stamp program termination is not something that "could" happen, but "will," and the notification itself is confined to one sentence in a state notice and one sentence in an FNS letter to the store. Federal regulations are, after all, not the normal fare of neighborhood stores or, for that matter, neighborhood lawyers.

■ It is not up to the courts, however, to insist that administrative agencies do what a judge thinks may be more desirable. He must determine only whether the procedures adopted by the agency conform to law. A store has the opportunity for a full hearing on the WIC violation. In *East Food*, the store availed itself of that opportunity; in *Garden Foods*, the store conceded one violation in settlement. FNS disqualified both stores from participation in the food stamp program on the basis of the undisputed evidence that there had been a WIC determination of a WIC violation and each had been disqualified from the WIC program as a result, and they had then been notified in appropriate fashion that the disqualification could result in disqualification from the food stamp program. Both stores now contend that FNS could not rely upon the WIC disqualification. They argue that they were entitled to an independent determination of the charged violations by FNS and, if they were dissatisfied by that determination, to a trial *de novo* here.

■ We have no quarrel with the notion that a store is entitled to one administrative due process hearing—not two. The WIC program is related to the food stamp program. We think FNS is well within the ambit of its authorized discretion in adopting the WIC hearing as its own. Indeed, WIC provides for a full evidentiary hearing, well beyond the administrative review under the food stamp program. Nor are we persuaded by two other East Food contentions: that it was not explicitly found in the WIC hearing to have violated federal requirements, and that there were no federal violations because the charged conduct affected only a tester employed for the purpose and not a participant. In the WIC hearing it was determined that food instruments of a particular value were exchanged for food of a considerably lesser value and that food instruments were exchanged for cigarettes and cash. Each was clearly a federal violation of a magnitude to trigger disqualification from the food stamp program under the regulations. We are given no reason why a tester cannot act as a surrogate participant as a means of enforcement.

■ We are troubled, however, by the *"de novo"* requirement of 7 U.S.C. § 2023. If there had been no WIC proceeding and FNS had itself determined the underlying violations, it is clear that this court would have to make an independent determination as to whether or not there was a violation. It may or may not be good policy to involve the courts in trials over whether or not a participant got a pack of cigarettes for food stamps, but the policy is up to Congress, not the agency or the courts. If a store is found in violation in a WIC proceeding, and it can thereafter obtain a judicial determination of *that* violation, we doubt that the store can obtain a second *de novo* look when FNS disqualifies on the basis of the WIC disqualification. The § 2023 *de novo* trial can be in either state or federal court. The WIC hearing regulations do not appear, however, to provide for an independent judicial determi-

nation unless, perhaps, state law should itself so provide. *See* 7 C.F.R. § 246.18(d).

We do not believe that FNS can avoid an independent judicial determination by relying upon a state procedure that does not permit such a determination. Congress has provided for a possible two bites: an administrative review and a judicial trial. FNS need not provide three; it can accept the state proceeding as the administrative bite, but we do not think it can ignore the statutory direction that a *de novo* trial be, at some point, an available option.

 We are also troubled by the seemingly mechanistic adoption of the state disqualification sanction. The statute evidences a concern for the hardship to food stamp participants should the disqualification of a store substantially restrict the participant's ability to use the program. The Secretary is granted the discretion to impose a civil fine if disqualification would cause hardship to participants. The regulations echo that concern except that, as we read the regulations, there is no discretion to impose a fine rather than disqualification if disqualification was the WIC violation sanction. Here East Food (although not Garden Foods) claimed that disqualification would cause hardship to participants. FNS, probably because the option does not appear to be open, did not consider the imposition of a fine as an alternative. We think it is obligated to do so. How that discretion is exercised is up to FNS, but we believe that FNS has to at least consider that alternative and rule upon it.

In light of the above, we deny the government's motion for summary judgment in *East Food. Garden Foods* is, however, another matter. Garden Foods conceded the violation and claims now that it did so because of inadequate advice from its attorney and ignorance of the impact of its concession. That may well be so, and we have previously indicated our view that the notification of consequences is considerably less clear than it could be. The fact remains that the store did enter into a consent agreement in which it waived its rights to contest one violation and accepted a significant sanction after having been advised by the state that it could lead to termination from the food stamp pro-

gram. We do not think Garden Foods can now contest that violation, either before FNS or in court, because its earlier waiver has had further adverse consequences. *See Santos v. Kolb,* 880 F.2d 941, 944 (7th Cir.1989). Accordingly, we conclude that Garden Foods is unlikely to prevail on the merits here and we therefore deny its motion for a stay of administrative action.