Hun Jong KIM, Plaintiff,

v.

UNITED STATES of America
et ano., Defendants.

No. CV–92–4920 (CPS).

United States District Court,
E.D. New York.

May 7, 1993.

Richard A. Izzo, Denver, CO, for plaintiff.

Mary Jo White, U.S. Atty., Eastern District of New York by Claire S. Kedeshian, Asst. U.S. Atty., Brooklyn, NY, for defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiff, Hun Jong Kim, as proprietor of Kim's Family Market, commenced this action pursuant to 7 U.S.C. § 2023(a) seeking judicial review of a final determination by the Food and Nutrition Service ("FNS") disqualifying plaintiff as a vendor under the food stamp program for a period of three years. By order to show cause plaintiff seeks a preliminary injunction staying the withdrawal while this action is pending. For the reasons set forth below, the motion is denied.

The following facts are essentially undisputed. Plaintiff operates a "green grocery" located at 1819 Flatbush Avenue in Brooklyn, New York. The FNS suspended plaintiff from the food stamp program because plaintiff was disqualified for a period of three years from participating in the Supplemental Food Program for Women, Infants and Children ("WIC").

The New York State Department of Health ("DOH") disqualified Kim from participating in WIC because of various alleged violations of Kim's WIC vendor contract and of New York State Department of Health regulations. These violations included the following: (1) accepting a WIC check in exchange for items not specified on the face of the WIC check—specifically "non-WIC Hawaiian Punch"; (2) numerous instances in which WIC checks were accepted without verifying the signature of the customers' WIC identification card against the signature on the customers' WIC check; (3) numerous instances in which the WIC check was redeemed for amounts which exceeded the purchase price of the goods exchanged for the WIC check.

By letter dated March 25, 1992, DOH notified plaintiff that, effective April 14, 1992, Kim was suspended from participating in WIC. In addition to notifying plaintiff of the impending disqualification from WIC, this letter advised plaintiff of the alleged infractions that formed the basis for the disqualification action, informed plaintiff of his right to a hearing prior to the disqualification from WIC, and informed plaintiff that the disqualification from WIC might also result in the withdrawal of plaintiff's authorization to participate in the federal food stamp program.

Plaintiff, who was born in Korea and immigrated to the United States in 1985, states that he did not understand the March 25 letter because the letter was written in English, in which he is not literate. Because he did not understand the letter, plaintiff says, he did not exercise his right to a hearing.

Plaintiff eventually became aware of his disqualification from WIC after his bank refused to honor WIC vouchers. Thereafter, plaintiff says, he brought a subsequent notice from the DOH directing plaintiff to desist from accepting WIC vouchers to his attorney, who explained the import of the letter. Plaintiff has apparently still not contested the disqualification from WIC in an Article 78 proceeding in the New York courts; however, he states that, due to his delay in recognizing the import of the notice, he is at

present unable to offer any evidence to rebut the alleged infractions.

On May 15, 1992, plaintiff received a letter from the FNS notifying plaintiff that he was disqualified as a vendor under the food stamp program as a result of his disqualification from WIC. Plaintiff requested an administrative review of that decision. Disqualification was stayed pending administrative review. By letter dated September 16, 1992, plaintiff was advised that upon review the FNS had reaffirmed the decision to disqualify plaintiff and that the disqualification would become effective thirty days after plaintiff's receipt of the letter. Plaintiff then filed this action on October 16, 1992.

In his affidavit in support of the motion for a stay of the administrative action pending the resolution of this matter, plaintiff alleges that at least 30% of his gross weekly income results from his participation in the food stamp program. He alleges that withdrawal from the food stamp program, compounded by the disqualification from WIC, will force his business to close. He also alleges that withdrawal will disrupt the good will of his business because customers who sometimes purchase goods with food stamps and other times purchase goods with cash will frequent other retailers who are authorized to accept food stamps.

Plaintiff argues that he is likely to succeed on the merits of this action because (1) FNS did not follow its own regulations in withdrawing plaintiff's authorization, (2) the FNS did not consider as a mitigating factor the circumstance that, due to inadequate notice, plaintiff was never afforded a meaningful opportunity to challenge the allegations that led to his WIC disqualification, and (3) the disqualification from the food stamp program for a period of three years is arbitrary and capricious.

## DISCUSSION

Plaintiff requests that this Court issue a preliminary injunction pursuant to 7 U.S.C. § 2023(a), staying the withdrawal of plaintiff's authorization to participate in the food stamp program pending judicial review of the final administrative disqualification.

Plaintiff carries the burden of establishing two facts to prevail in his motion for a preliminary injunction. Section 2023(a) provides:

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

7 U.S.C. § 2023(a). First, plaintiff must convince the Court of plaintiff's likelihood of prevailing on the merits, and second, plaintiff must show that disqualification will cause irreparable injury to plaintiff. *Ibrahim v. United States*, 650 F.Supp. 163, 165 n. 1 (N.D.N.Y.), *aff'd*, 834 F.2d 52 (2d Cir.1987). Plaintiff suggests that he is entitled to a preliminary injunction because he has raised a fair ground for litigation and the balance of hardships tips in his favor. However, as noted, this is not the standard that applies in these matters. *See De La Nueces v. United States*, 778 F.Supp. 191, 193 (S.D.N.Y.1991). The governmental action involved in this case is taken in the public interest: it ensures that the limited funds available for the food stamp program-benefit needy participants by removing from the program vendors who have violated the FNS regulations. *See Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989); *De La Nueces v. United States*, 778 F.Supp. at 194 n. 2.

### Irreparable Harm

In support of his argument that the withdrawal during the pendency of judicial review will cause Kim irreparable harm, Kim has submitted an affidavit alleging that the withdrawal will result in damage to the store's good will and in the loss of approximately 30% of the store's gross weekly income; Kim further alleges that this loss of income will force his store out of business. Although Kim does not provide the Court with any information concerning his profits,

losses, and financial condition to support these claims, the government does not directly dispute them.

The loss of 30% of gross weekly receipts coupled with the inevitable closing of the plaintiff's store constitutes irreparable harm. *See, e.g., De La Nueces v. United States,* 778 F.Supp. at 194; *Ibrahim,* 650 F.Supp. at 165–66; *Barbosa v. United States,* 633 F.Supp. 16, 18 (E.D.Wis.1986); *Turnage v. United States,* 639 F.Supp. 228, 231–32 (E.D.N.C.1986). *But see Gurtzweiler v. United States,* 601 F.Supp. 883, 885 (N.D.Ohio 1985).

### Likelihood of Success

Pursuant to section 2023(a), a district court reviews *de novo* the FNS's disqualification from the food stamp program. *See Ibrahim v. United States,* 834 F.2d 52, 53 (2d Cir. 1987); *De La Nueces v. United States,* 778 F.Supp. at 194.

#### 1. *First Claim*

Plaintiff is not likely to prevail on his claims that the FNS failed to follow its own regulations and does not have sufficient grounds on which to withdraw plaintiff from participation in the food stamp program. Plaintiff argues that the FNS misconstrued the applicable statutory and regulatory provisions in determining that FNS *must* disqualify plaintiff from the food stamp program because of plaintiff's disqualification from WIC. The government in response argues that FNS's actions complied with 7 C.F.R. § 278.1(n)(1), which is discretionary.[1] This part of Title 7 of the Code of Federal Regulations provides:

> FNS shall withdraw the Food Stamp Program authorization of any firm which is disqualified from the WIC Program based in whole or in part on any act which constitutes a violation of that program's regulation and which is shown to constitute a misdemeanor or felony violation of law, or for any of the following specific program violations:
>
> . . . .

(iv) Accepting WIC food instruments from unauthorized persons;

(v) Exchanging non-food items for a WIC food instrument;

(vi) Charging WIC customers more for food than non-WIC customers or charging WIC customers more than current shelf price; or

(vii) Charging for food items not received by the WIC customer or for foods provided in excess of those listed on the food instrument.

7 C.F.R. § 278.1(n)(1).

In a declaration submitted on behalf of defendant, Angela Mackey, who is the FNS officer who handled the administrative review of the withdrawal decision, states that the decision to withdraw plaintiff's authorization is based on the WIC disqualification letter from the DOH. Specifically, Mackey alleges that three of the violations identified in the DOH disqualification letter constitute violations of 7 C.F.R. § 278.1(o)(1)(i). She identifies the three violations as follows:

> (a) On 8/26/91, the vendor accepted WIC check # 99005451–3 which was subsequently redeemed in violation of 10 NYCRR 60–1.8(a)(2) . . . for $12.02 rather than the true purchase price of $10.85.
>
> (b) On 10/11/91, the vendor accepted WIC check # 991140601–6 which was subsequently redeemed in violation of 10 NYCRR 60–1.8(a)(2) . . . for $13.76 rather than the true purchase price of $11.95.
>
> (c) On 11/1/91, the vendor accepted WIC check # 99140740–2 which was subsequently redeemed in violation of 10 NYCRR 60–1.8(a)(2) . . . for $7.37 rather than the true purchase price of $4.67.

Mackey Decl. ¶ 6; DOH Letter, dated March 25, 1992, at 2.

The government contends that these listed infractions constitute a violation of 7 C.F.R. § 278.1(n)(1)(vi). The DOH letter specifically states that these three infractions are violations of Title 10, section 60–1.8(a)(2) of the New York Code of Rules and Regulations, which provides:

---

**1.** The first notification letter from FNS refers to section 278.1(*o*). Under the CFR then in print this was the numbering of the section now numbered as 278.1(n).

(a) Any food vendor, who, in the course of a transaction involving a food instrument (WIC check) commits any of the following acts shall be liable for disqualification from the WIC program for a period of up to three years . . . :

(2) the vendor charges the State or local agency prices in excess of those charged to other customers.

Section 278.1(n)(1)(vi) provides:

FNS shall withdraw the Food Stamp Program authorization of any firm which is disqualified from the WIC program . . . for any of the following specific program violations:

(vi) Charging WIC customers more for food than non-WIC customers or charging WIC customers more than current shelf price. . . .

A violation of 10 NYCRR 60–1.8(a)(2) is the equivalent of a violation of 7 C.F.R. § 278.1(n)(1)(vi) and provides sufficient grounds for withdrawal of authorization to participate in the food stamp program. *Cf. De La Nueces,* 778 F.Supp. at 193. Thus, the DOH letter provided grounds for disqualifying Kim's authorization to participate in the food stamp program because the letter identifies three instances where Kim or his employees charged the state agency more for food items than non-WIC customers would have been charged, an infraction within the ambit of 7 C.F.R. § 278.1(n)(1)(vi).

In addition, the DOH letter identifies a fourth WIC violation that constitutes a violation of 7 C.F.R. § 278.1(n)(1). The DOH letter states:

On 8/6/91, in violation of 10 NYCRR 60–1.8(a)(7) . . ., the vendor accepted WIC check # 98954978–4 in exchange for items not specified on the face of the WIC check; specifically: non-WIC Hawaiian Punch.

The New York Code of Rules and Regulations section cited in the letter provides:

(a) Any food vendor, who, in the course of a transaction involving a food instrument (WIC check) commits any of the following acts shall be liable for disqualification from the WIC program for a period of up to three years . . . :

(7) the vendor provides unauthorized items and/or items not specified on the face of the WIC check in exchange for a WIC check.

10 NYCRR § 60–1.8(a)(7). This section parallels subsection (vii) of 7 C.F.R. § 278.-1(n)(1): "Charging for . . . foods provided in excess of those listed on the food instrument." Thus, this instance as well may provide the FNS with sufficient grounds to justify the withdrawal of authorization.

■ Plaintiff also argues that the FNS violated its own regulations because the FNS administrative review, provided for in section 278.8, was limited to considering the DOH letter and the WIC infractions as they were described in that letter. Pl.Memorandum and Exhibits in Support ("Pl.Mem."). Section 279.8 of the regulation provides:

(a) Basis for review officer determination. The food stamp review officer shall make a determination based upon:

(1) The information submitted by the FNS regional office;

(2) Information submitted by the firm in support of its position; and

(3) Any additional information, in writing, obtained by the review officer from any other person having relevant information.

7 C.F.R. § 279.8. The FNS complied with this section since it reviewed the additional relevant information in the form of the DOH letter and reviewed plaintiff's letter in opposition to the withdrawal. *See* FNS Letter dated September 16, 1992. Plaintiff is essentially arguing that FNS had a duty to investigate the alleged infractions enumerated in the DOH letter independently; but no regulation requires this. In fact, investigation of WIC infractions by the FNS was precisely the duplication of effort the Secretary of Agriculture intended to avoid by promulgating section 278.1(n)(1). *See* 51 Fed.Reg. No. 232 at 43612–13 (proposed Dec. 3, 1986); *De La Nueces v. United States,* 1992 WL 58851 (S.D.N.Y. March 16, 1992).

■ Plaintiff also argues that the FNS violated its own regulations by applying section 278.1(n)(1) in this case even though a hearing on the merits of the alleged WIC

**112**

violations never occurred at the state level. Plaintiff contends that the Secretary intended that mandatory withdrawal based upon WIC violations would apply only where a store "had been found, **after full due process,** to have violated WIC regulations." Pl. Mem. at 1 (citing 51 Fed.Reg. No. 232 at 43612–13). Plaintiff understands the term "full due process" to indicate situations where the store had actually participated in a hearing on the merits of the alleged WIC infractions in front of the state agency. *See* Pl.Mem. at 1–2. Plaintiff suggests that the insertion of the word "full" prior to "due process" dictates this reading of the Secretary's purpose in promulgating Section 278.-1(n)(1).

However, this is a strained reading at best. Due process fundamentally involves an opportunity to be heard; the insertion of the word "full" in front of the term "due process" is unlikely to indicate that a proceeding on the merits actually take place because the adjective 'full' does not usually alter the fundamental nature of the noun it modifies. In any event, if the Secretary had intended this meaning of the applicability of section 278.-1(n)(1), the Secretary almost certainly would have worded the section differently to reflect that it was applicable only in situations where the alleged WIC violations had been litigated on the merits in a prior state proceeding. Further, as discussed next, plaintiff's contention that he was denied due process in the state proceedings is not likely to prevail on the merits.

### 2. *Second Claim*

■ Plaintiff is also not likely to prevail on his claim that the FNS was required to consider as a mitigating factor the fact that plaintiff never challenged the allegations in the DOH letter because of inadequate notice. Plaintiff argues that he neglected to object to the WIC disqualification in a timely manner because he is not literate in the English language and because he failed to appreciate the import of the DOH letter, which was written in English.

However, as a matter of law, the mere fact that the DOH letter was written in English does not suffice to support a claim that the notice was insufficient. Courts are loath to find a requirement under constitutional due process guarantees that notices to participants in government benefits programs must be written in languages in addition to English. *See, e.g., Soberal–Perez v. Heckler,* 717 F.2d 36, 43 (2d Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1713, 80 L.Ed.2d 186 (1984) ("A rule placing the burden of diligence and further inquiry on the part of non-English-speaking individual served in this country with a notice in English does not violate any principle of due process."); *Vialez v. New York City Housing Authority,* 783 F.Supp. 109, 121 (S.D.N.Y.1991) (noting burden which would be placed on agencies if they were required to "keep track of what language each [participant] speaks and send correspondence specially translated into each language").

In this case, Kim received the letter from the DOH, which was written in English. A prudent and reasonable proprietor participating in programs administered by the DOH would have had the letter translated promptly. *See Ali Hoa Supermarket, Inc. v. United States,* 657 F.Supp. 1207, 1209 (S.D.N.Y. 1987). Therefore, Kim's claim of inadequate notice is likely to fail.

Furthermore, plaintiff has not pointed out to the Court any regulation which requires the FNS to consider "mitigating circumstances" when the vendor's authorization is withdrawn pursuant to 7 C.F.R. § 278.-1(n)(1), and research has revealed none.

### 3. *Third Claim*

Plaintiff is not likely to prevail on his claim that the withdrawal of authorization for three years was a harsh, arbitrary and capricious sanction.

■ The Court in making a *de novo* review of the FNS's action can review the propriety of the sanction imposed by the FNS. *Willy's Grocery v. United States,* 656 F.2d 24 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982). However, the "standard for review of the imposition of a sanction is a determination whether the secretary's action was arbitrary and capricious, i.e., whether it was unwar-

ranted in law or without justification in fact." *Id.* Where the federal agency properly adheres to its own regulations and guidelines in imposing a sanction, the sanction is not arbitrary or capricious. *Lawrence v. United States,* 693 F.2d 274, 276 (2d Cir.1982); *Willy's Grocery,* 656 F.2d at 26; *Ali Hoa Supermarket,* 657 F.Supp. at 1208–09.

Under section 2021 of title 7, a retail food store that has violated "any of the provisions of this chapter or the regulations issued pursuant to this chapter" may be disqualified for a specified period of time from participation in the food stamp program in accordance with the following parameters:

Disqualification.... shall be—

(1) for a reasonable period of time, of no less than six months nor more than five years, upon the first occasion of disqualification.

7 U.S.C. § 2021. When authorization for participation in the food stamp program is withdrawn based on 7 C.F.R. § 278.1(n), the regulations specify that the period of withdrawal will equal the period of time during which the store is disqualified from the WIC program:

Once the firm has served the period of removal from WIC specified by the State agency, the firm may reapply for Food Stamp Program authorization and be approved if otherwise eligible.

7 C.F.R. § 278.1(n)(2); *see De La Nueces v. United States,* 1992 WL 58851.

█ In this case, the FNS withdrew Kim's authorization to participate in the food stamp program for a "period of time which coincides with the WIC Program disqualification period of three years." Letter from FNS to Kim dated May 15, 1992; *see also* Letter from FNS to Kim dated September 16, 1992. Insofar as Kim did violate 7 C.F.R. § 278.1(n)(1), the withdrawal of authorization for a period of three years coinciding with Kim's disqualification from WIC is not arbitrary and capricious but, rather, is in compliance with the applicable regulations, which in turn are within the mandate of the statute.

#### 4. Constitutional Challenges

█ Finally, plaintiff is not likely to prevail on his claims that the applicable regulations are arbitrary and capricious or violative of plaintiff's right to equal protection of the law or void for vagueness.

Plaintiff argues that section 278.1(n)(1) of the FNS regulations is arbitrary and capricious. Congress explicitly delegated authority to the Secretary of Agriculture to promulgate such regulations. *See* 7 U.S.C. § 2013(c) ("The Secretary shall issue such regulations consistent with this chapter as the Secretary deems necessary or appropriate for the effective administration of the food stamp program...."). Where there is an express delegation of authority to the administrative agency, the legislative regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron USA v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

A rational basis clearly exists for the challenged regulatory provision. Section 278.-1(n)(1) was promulgated because of the similarity between the WIC program and the food stamp program, the fact that many retailers participate in both programs, and the fact that FNS must oversee compliance with program regulations. The regulations permit FNS to withdraw the authorization of a firm if FNS finds that the firm lacks sufficient business integrity or reputation as to warrant that firm's continuance in the program. One of the factors that may be considered in determining business integrity and reputation is whether the firm has been officially removed or disqualified from other federal, state, and local programs. Given the similarity of the WIC program and the food program, the Secretary could properly determine that some kinds of violations of the WIC program should be sufficient grounds for withdrawal of the firm from the food stamp program. *See* 51 Fed.Reg. No. 232 at 43612–13.

It is also reasonable for the Secretary to attempt to avoid duplication of effort in investigating violations that a state agency has already investigated in the context of viola-

tions of WIC. It is also reasonable to determine, given the similarity of the programs, that a violation of WIC impugns the business integrity of the violating firm so that withdrawal from the food stamp program is appropriate.

Plaintiff also argues that the regulations effectively identify two classes of offenders and that the FNS treats the two classes differently in violation of constitutional equal protection guarantees. The two classes of offenders under the current regulatory scheme are said to be those who violate only food stamp regulations and those who violate them because they have violated WIC regulations. The regulations allow the FNS some discretion in meting out sanctions when only food stamp program regulations have been violated directly; in contrast, section 278.1(n)(1) mandates that for certain kinds of WIC violations the FNS *must* withdraw the offender from the food stamp program for the same period of time as the WIC disqualification.

However, this difference in determining sanctions is not irrational or capricious. The Secretary has determined that some types of infractions warrant certain sanctions. Given the similarity of the WIC program and the food stamp program, the Secretary had a reasonable basis on which to determine that certain types of violations of WIC amount to violations of the food stamp program and that the sanction for both violations should be the same.

Plaintiff also argues that the notice provision in section 278.1(n)(2) is overly vague and insufficient to afford a store owner adequate notice of the severity of the sanctions which will be imposed on the owner in consequence of the WIC violation. Section 278.1(n)(2) provides;

> FNS shall not withdraw the Food Stamp Program authorization of a firm which is disqualified from the WIC Program unless prior to the time prescribed for securing review of WIC disqualification action, the firm was provided notice that it could be

withdrawn from the Food Stamp Program based on the WIC violation.

7 C.F.R. § 278.1(n)(2) (emphasis added). Plaintiff argues that the notice required by section 278.1(n)(2) ought to inform store owners that the WIC disqualification *must* result in withdrawal from the food stamp program.

This argument, however, relies on a misreading of the pertinent regulations. Withdrawal from the food stamp program is mandatory only for certain categories of WIC infractions, not for all infractions. Thus, this section providing for notice and the notice actually provided to Kim [2] are not inaccurate and consequently are not constitutionally or statutorily infirm. *See Russell's Old Trading Post v. United States,* 783 F.Supp. 395, 398 (N.D.Ind.1992) (rejecting argument that notice was inadequate because the notice said that withdrawal "may" occur).

For the reasons stated above, plaintiff's motion for a preliminary injunction is denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

---

**2.** It bears mentioning that Kim was given notice in compliance with this section: Kim was notified in the original DOH letter regarding the WIC infractions that the WIC disqualification could result in a withdrawal from the food stamp program; this letter was received by Kim at a time when Kim could still have challenged that WIC disqualification. *See* DOH letter at 3.