Fernando A. CASTILLO d/b/a El Coqui
Grocery Store, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 3:97CV00480(JBA).

United States District Court,
D. Connecticut.

May 30, 1997.

Sydney T. Schulman, Inmates Legal Assistance Program, Hartford, CT, for Plaintiff.

David J. Sheldon, U.S. Attorney's Office, New Haven, CT, for Defendant.

## RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

ARTERTON, District Judge.

Plaintiff Fernando Castillo brings this action for judicial review of the final determination issued by the Food and Consumer Service[1] ("FCS") permanently disqualifying plaintiff's retail food store, El Coqui Grocery Store, from participation in the Food Stamp Program. Pursuant to 7 U.S.C. § 2023(a), plaintiff seeks a preliminary injunction enjoining the federal government from enforcing plaintiff's disqualification while this review is pending.

## FACTUAL BACKGROUND

Food stamp coupons can only be used at retail food stores that FCS has approved for participation in the Food Stamp Program (the "Program"). 7 U.S.C. § 2013. Plaintiff is the owner of a retail food store that has been authorized to participate in the Program since May 10, 1994. In order to participate in the Program, plaintiff signed an application which detailed the rules of the Program and certified that his employees would comply with these rules.

The FCS can permanently disqualify a retail food store from participating in the Program if the store has engaged in the trafficking of food stamps. 7 U.S.C. § 2021(b)(3)(B). Trafficking is defined as the "buying or selling" of food stamp coupons "for cash or consideration other than eligible food." 7 C.F.R. 271.2 (1996).

On July 17, 1996, the FCS mailed a "charge letter" to plaintiff, informing him that it had uncovered two incidents of trafficking at his store. The letter gave a brief description of the facts surrounding the incidents and informed plaintiff that the sanction for these trafficking violations is permanent disqualification from the Food Stamp Program. The letter explained that plaintiff might be eligible for a civil money penalty in lieu of permanent disqualification if there was "substantial evidence that [plaintiff's] firm had an effective policy and program in effect to prevent violations". The agency stated that "[s]pecific criteria for establishing that such a program exists are detailed in Section 278.6(i) of the enclosed regulations. You must meet each of the four criteria listed and are required to provide the documentation as specified." However, plaintiff alleges that no such regulations were enclosed.

The plaintiff responded in a letter dated July 26, 1996, in which he stated that he was not aware of the violation, that he strived to operate the "business in as legal a manner as possible" and that he recently fired several employees. Additionally, plaintiff requested "more proof from [FCS] as to the details of this allegation." Further, plaintiff stated that "[i]f your office can prove this allegation then we will apply for the civil money penalty." On August 5, 1996, plaintiff and a man identified as Jose Gonzalez, "Attorney-in-fact for owner" sent a second letter requesting the FCS to consider imposing civil money penalty in lieu of permanent disqualification. However, no documentation was sent supporting this request.

On August 23, 1996, Thomas Andresen, the regional manager of Retailer Operations for FCS, notified plaintiff that FCS found that the violations "did, in fact, occur at [plaintiff's] store." Further, Andresen found that plaintiff was not eligible for a civil money penalty because "he did not submit the required documentation as specified in the charge letter." Andresen advised that plaintiff would be permanently disqualified from the Food Stamp Program effective September 3, 1996 and that he had the right to appeal this determination to an Administrative Review Officer ("ARO").

On August 30, 1996, plaintiff's attorney, Sydney Schulman, requested a review of An-

---

1. The FCS administers the Food Stamp Program on behalf of the Department of Agriculture. 7 C.F.R. § 271.3.

dresen's determination, claiming that plaintiff had no knowledge of the trafficking; safeguards were in place to prevent such conduct; and that permanent disqualification would cause significant hardship to plaintiff. Further, plaintiff complained that the FCS's failure to enclose regulations made it difficult for plaintiff to effectively request consideration for a civil money penalty.

On September 12, 1996, the FCS Administrative Review Branch granted plaintiff's request for review and held plaintiff's disqualification in abeyance pending the ARO's final determination. The FCS gave plaintiff three weeks to submit additional information to be considered in its review. On October 11, 1996, attorney Schulman responded with a letter reiterating plaintiff's request for a civil money penalty and providing additional information regarding plaintiff's compliance with food stamp regulations.

On February 20, 1997, the ARO issued his determination that the administrative charges were valid and that plaintiff did not qualify for a civil money penalty in lieu of disqualification because (a) internal USDA policy guidelines provide that trafficking warrants permanent disqualification, regardless of whether the store owner knew of or benefitted from the violation; (b) the hardship to household exception, which allows a civil money penalty to be assessed in lieu of disqualification, was not available because the FCS regulations provide that a civil money penalty may not be imposed in lieu of permanent disqualification; and (c) plaintiff did not provide adequate documentation to support his request for a civil money penalty.

## STATUTORY BACKGROUND

Prior to 1988, the Food Stamp Act mandated permanent disqualification for the first trafficking violation, regardless of whether the food store owner knew of or benefitted from the trafficking. *J.C.B. Super Markets, Inc. v. U.S.*, 530 F.2d 1119 (2d Cir.1976). In 1988, Congress amended the statute to give the Secretary of Agriculture authority to impose a money penalty in lieu of permanent disqualification under certain circumstances. The statute currently provides:

> Disqualification shall be permanent upon the first occasion or any subsequent occasion of ... trafficking in coupons... except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 for each violation (except that the amount of civil money penalties imposed for violations occurring during a single investigation may not exceed $40,000) in lieu of disqualification under this subparagraph, for such ... trafficking ... if the Secretary determines that there is substantial evidence (including evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefited from, or was involved in the conduct or approval of the violation) that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and regulations...

7 U.S.C. § 2021(b)(3)(B) (1988 & Supp.)[2]. The legislative history shows that this amendment was designed to permit FCS to impose a money sanction, rather than disqualify innocent store owners.

> The Committee expects [FCS] to continue to vigorously pursue and punish those perpetrators involved in food stamp fraud, including store personnel and owners that are culpable or negligent with respect to trafficking offenses.... However, innocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations....

> With Secretarial discretion, we can be assured that the punishment will more closely fit the crime.

*Corder v. United States*, 107 F.3d 595 (8th Cir.1997) citing H.R. Rep. No. 100–828, pt.1 at 27–28 (1988).

The Secretary promulgated regulations to govern the exercise of this discretion. These regulations require plaintiff to "request a

2. The parenthetical directing the Secretary to consider certain evidence was added in 1990. *See* Food, Agriculture, Conservation and Trade Act of 1990, Pub.L.No. 101–624, § 1743, 104 Stat. 3359, 3795 (1990).

civil money penalty and submit evidence establishing the store's eligibility for the civil money penalty within ten days after the store has received a charge letter." 7 C.F.R. 278.6(b)(2)(ii). The evidence submitted must demonstrate "that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program." 7 C.F.R. § 278.6(i). The "minimum standards for eligibility" for the civil money penalty requires the store to "establish by substantial evidence its fulfillment of each of the following criteria:"

Criterion 1. The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and

Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of the violations cited in the charge letter sent to the firm; and

Criterion 3. The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and

Criterion 4. Neither firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations. . . .

7 C.F.R. § 278.6(i)

Additionally, the regulations specify the types of documentation required to satisfy the criteria.

(1) Compliance policy standards. As specified in Criterion 1 above, in determining whether a firm has established an effective policy to prevent violations, FCS shall consider written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent with . . . current [Food Stamp Program] policy on the proper acceptance and handling of food coupons. As required by Criterion 2, such policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation. In addition . . . FCS may consider the following:

(i) Documentation reflecting the development and/or operation of a policy to terminate the employment of any firm employee found violating [Food Stamp Program] regulations;

(ii) Documentation of the development and/or continued operation of firm policy and procedures resulting in appropriate corrective action following complaints of [Food Stamp Program] violations or irregularities committed by firm personnel;

(iii) Documentation of the development and/or continued operation of procedures for internal review of firm employees' compliance with [Food Stamp Program] regulations;

(iv) The nature and scope of the violations charged against the firm;

(v) Any record of previous firm violations under the same ownership or management; and

(vi) Any other information the firm may present to FCS for consideration.

(2) Compliance training program standards. . . . A firm which seeks a civil money penalty in lieu of a permanent disqualification shall document its training activity by submitting to FCS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s). FCS shall consider a training program effective if it meets or is otherwise equivalent to the following standards:

(i) Training for all managers and employees whose work brings them into contact with food stamps . . .

(ii) Training shall be designed to establish a level of competence that assures compliance with Program requirements . . .

(iii) Written materials, which may include FCS publications and program regulations that are available to all au-

thorized firms, are used in the training program. . . .

7 C.F.R. § 278.6(i)(1), (2) (emphasis added).

### · DISCUSSION

■ To obtain a preliminary injunction in an action brought under 7 U.S.C. § 2023(a), plaintiff must demonstrate both irreparable harm and a likelihood of success on the merits. *Young Jin Choi v. United States*, 944 F.Supp. 323, 325 (S.D.N.Y.1996).

### A. IRREPARABLE HARM

■ In support of his contention that disqualification will cause irreparable harm, Castillo has submitted an affidavit alleging that 45% of his business is derived from food stamps. Additionally, Castillo attests that if he is denied a stay of the disqualification, "[t]here would be no need for a final decision by the court because my store would close before I could get it."

The loss of 45% of one's business and the potential for plaintiff to lose his business constitutes irreparable harm. See *Young Jin Choi v. United States*, 944 F.Supp. at 326, n. 2 (irreparable harm established where plaintiff's affidavit attested to a 40% loss of business if his store is disqualified); *Kim v. United States*, 822 F.Supp. 107, 110–11 (E.D.N.Y.1993) (irreparable harm established where plaintiff's affidavit attested to a 30% loss in gross weekly income and that this loss will force the store out of business); *Ibrahim v. United States*, 650 F.Supp. 163 (N.D.N.Y.), *aff'd*, 834 F.2d 52 (2d Cir.1987) (irreparable harm established where plaintiff's affidavit attests to a 30% loss of business). Accordingly, plaintiff has established that he will suffer irreparable injury if the preliminary injunction is not granted.

### B. LIKELIHOOD OF SUCCESS ON THE MERITS

■ The parties agree that the Second Circuit adopted a bifurcated standard of review for food stamp cases, applying a *de novo* review of the facts on which the violation is based. In this review, the district court may consider new evidence and is not limited to the administrative record. *Ibrahim v. United States*, 834 F.2d 52, 54 (2d Cir.1987).

■ If the Court upholds the agency's finding of a violation, the Court must determine whether "the Secretary's action was arbitrary or capricious, i.e. whether it was unwarranted in law or without justification in fact." *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir.1981) *cert. denied* 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982) (citations omitted). A sanction is not arbitrary and capricious if the agency properly adheres to its own regulations and guidelines in imposing a sanction. *Id.*

■ Here, plaintiff only challenges the ARO's decision to impose permanent disqualification rather than a civil money penalty. Accordingly, to succeed on the merits of his claim, plaintiff must show that the sanction imposed was arbitrary or capricious. However, there is conflicting authority as to whether a district court may consider new evidence when reviewing the propriety of the sanction imposed. Some courts have found that the court may modify the agency's sanction if, on the *de novo* record, the FCS acted arbitrarily or capriciously. See *Cross v. United States*, 512 F.2d 1212 1218 (4th Cir. 1975); *Wong v. United States*, 859 F.2d 129 (9th Cir.1988); *Sims v. United States*, 860 F.2d 858 (8th Cir.1988). Other courts have held that the district court should review "the sanction imposed in light of the administrative record to judge whether the agency properly applied its regulations." *Broad Street Food Market, Inc. v. United States*, 720 F.2d 217 (1st Cir.1983); *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984).

The Second Circuit has not spoken on this issue. Plaintiff urges the Court to follow the reasoning in *Wong* and *Sims*, in which the courts distinguished between a review of the sanction itself, which is entitled to deference, and a review of the facts upon which the sanction is predicated, which should be reviewed *de novo*. In *Wong* and *Sims*, the agency's finding of a violation was upheld, but the sanction imposed was reduced because the agency's determination that the store owner had a "practice" of violating the Program was arbitrary and capricious. *Wong*, 859 F.2d at 132; *Sims*, 860 F.2d at

862. The Government argues that the sanction imposed was not arbitrary or capricious because it was in accordance with the facts and regulations. However, the government appears to agree that the Court can consider new evidence in reviewing the facts upon which the sanction was predicated. *See* Def. Reply Mem. at 14 (arguing that plaintiff had the opportunity to submit evidence to this court to demonstrate that he satisfied the criteria in the regulations but failed to do so).

The ARO found that plaintiff did not qualify for a civil money penalty because he failed to provide adequate documentation of an effective compliance policy as required by the regulations. 7 U.S.C. § 2021(b)(3)(B). Although the regulatory criteria for proving an effective compliance policy and program appears to favor written documentary evidence of the compliance policies, the regulations allow other types of evidentiary submissions. 7 C.F.R. § 278.6(i). For example, under Criterion 1 (development of an effective compliance policy), the regulations allow FCS to consider (a) the nature and scope of the violation charged; (b) any record of previous firm violations; and (c) any other information the firm may present to the FCS for consideration. 7 C.F.R. § 278.6(i)(1)(iv)–(vi). Here, there was evidence of two violations, committed by the same clerk, amounting to less than $200 in trafficked food stamps. Additionally, on at least one previous occasion, a store employee complied with the regulations and did not allow the FCS investigator to purchase ineligible items from the store. Further, plaintiff has no record of any previous violations.

Under Criterion 2, plaintiff must establish that its compliance policy and program were in operation prior the violation. The only evidence before the ARO under this criterion was plaintiff's clean record with the FCS. Plaintiff has submitted additional evidence to this Court. In his affidavit, plaintiff states, "[a]s much as I could, I tried to make sure that the employees knew the rules about food stamps and that they accepted them correctly. When the government sent me the rules in the mail, I gave them to all the employees and told them to read them. If I was at the store with my employees, I would remind them about what the rules were and what they could and could not accept." Although this affidavit is not a model of clarity, it can fairly be read as, at least, an attempt to demonstrate that plaintiff had an effective compliance policy in place prior to the violations.

Plaintiff contends that the third criterion, requiring evidence of a personnel training program, is beyond that required by statute. However, even assuming that this requirement is within the statute's mandate, plaintiff argues that he satisfied this criterion. The regulations and prior practice suggest that FCS adapts its stringent regulations in a manner which will take in to account the differences between small convenience stores and supermarket chains. See *Freedman v. U.S. Dept. of Agriculture,* 926 F.2d 252 (3d Cir.1991) (affirming FCS' imposition of a civil money penalty, rather than disqualification, based on affidavits by the convenience store owner and two employees attesting to the store's training practice); 7 C.F.R. § 278.6(i)(2)(i) ("FCS shall consider a training program effective if it meets or *is otherwise equivalent* to the following...)" (emphasis added). Here, plaintiff's affidavit establishes that plaintiff gave employees the food stamp rules to read, reminded employees of the rules and would go to the store unannounced to check on the employees and to make sure that they were correctly accepting the food stamps. Plaintiff argues that this personnel training program was reasonable considering the size of plaintiff's store.

Under Criterion 4, the agency can consider whether the ownership or management were aware of, approved, or benefitted from the trafficking violations. The plaintiff's own letters in which he states he had no knowledge of a violation, as well as the plaintiff's attorney's statements were submitted to the FCS; the government does not appear to dispute plaintiff's claimed absence of knowledge.

All four of these criteria must be satisfied in order to impose a civil money penalty. The ARO's decision merely recites that the plaintiff's documentation was inadequate, but fails to articulate which evidence the ARO weighed or whether the ARO took the size of

plaintiff's store into account in deciding the sufficiency of the documentation.

Additionally, plaintiff argues that the ARO's decision relies, in part, on regulations or guidelines which contravene the FCS's statutory authority. First, the ARO cites to an "internal USDA policy guidelines" for the proposition that trafficking "shall warrant permanent disqualification, regardless of whether or not the firm benefited from the violation, or the owner or management of the firm had knowledge of the violation." *See* ARO Decision, at 3. This "internal policy guideline" is in direct contravention of the Food Stamp Act, which specifically grants the Secretary discretion to impose a civil money penalty in lieu of disqualification if "there is substantial evidence (including evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefitted from, or was involved in the conduct or approval of the violation) that such store... had an effective policy and program in effect to prevent violations [of the Food Stamp Act]." 7 U.S.C. § 2021(b)(3)(B).

Second, the Food Stamp Act provides that "[a]ny approved retail food store... may be disqualified ... or subject to a civil money penalty ... if the Secretary determines that its disqualification would cause hardship to food stamp households." 7 U.S.C. § 2021(a). In his decision, the ARO stated that the "hardship to households" exception is "expressly prohibited" here because the regulations provide that "a civil money penalty may not be imposed in lieu of a permanent disqualification." 7 C.F.R. 278.6(f)(1). However, the statute does not limit the "hardship to households" exception to non-permanent disqualification, but rather provides generally that *any* disqualification may be replaced by a money penalty. As was noted by the Eighth Circuit, this FCS regulation "deprives food stamp beneficiaries of a statutory exception enacted for their benefit." *Ghattas v. United States,* 40 F.3d 281 (8th Cir. 1994).

It is difficult to determine from the ARO's decision how these flawed guidelines and regulations were applied in this case. Because the Court cannot determine whether the entire decision was infected by the ARO's reliance on these guidelines and regulations, it is likely that the ARO's decision will need to be reversed and remanded to the agency for further consideration.

Furthermore, based solely on the evidence in the administrative record, there appears to be information which the ARO failed to consider. In his decision, the ARO summarizes the specific information submitted in support of plaintiff's request for a civil money penalty in lieu of disqualification which he considered. However, when discussing attorney Schulman's October 11, 1996 letter the ARO characterizes his view of this letter as "reiterat[ing] the previously given information and again request[ing] a civil money penalty in lieu of permanent disqualification, and provided your reasoning therefore." See Administrative Review Decision, at 2.

While this October 11th letter does reiterate some of the information contained in earlier correspondence, it also contained new information regarding plaintiff's compliance with the Program.

My client in order to establish and implement an effective compliance policy and program to prevent violations has hired new staff, conducted training for staff in Food Stamps regulations, design[ing] spot checks by himself to insure regulations are being met, and intends to periodically have retraining in regulations sessions to reaffirm the importance of knowing and not violating said regulations. While no system or person is perfect or an absolute guarantee, we feel that this will serve to reduce the possibilities of violations to a statistical minimum.

Letter from Schulman to Smithey of October 11, 1996. Because the ARO's summary omits recognition of this information, while itemizing other facts considered, it may be inferred that the ARO failed to incorporate it into his assessment of whether plaintiff qualified for a civil money penalty.

Plaintiff has demonstrated a likelihood that the Court will reverse the agency's decision and remand it for further consideration. The ARO may have failed to consider or weigh the evidence to determine whether

plaintiff satisfied the four criteria and/or may have relied on regulations and "internal policy guidelines" which contradict the FCS's statutory authority. Further, the Court cannot discern from the ARO's decision whether FCS failed to consider certain evidence presented by plaintiff.

### CONCLUSION

In light of the foregoing, plaintiff's motion for a preliminary injunction is GRANTED. The FCS is enjoined from enforcing plaintiff's disqualification until the Court's final ruling is issued following a hearing in this matter.

IT IS SO ORDERED.