### Jose MORALES, d/b/a/ Friendly's Market and Deli

#### v.

### UNITED STATES of America.

#### No. 3:97cv1409 (JBA).

United States District Court,
D. Connecticut.

Sept. 30, 1998.

Sydney T. Schulman, Law Offices of Sydney T. Schulman, Hartford, CT, for Jose Morales.

David J. Sheldon, U.S. Attorney's Office, New Haven, CT, for US.

### RULING ON PLAINTIFF'S OBJECTION TO RECOMMENDED RULING [DOC. # 21] AND RULING ON RECOMMENDED RULING [DOC. # 19]

ARTERTON, District Judge.

Plaintiff brings this action under 7 U.S.C. § 2023(a) seeking review of a decision by an Administrative Review Officer ("ARO") of the Food and Consumer Service ("FCS") disqualifying plaintiff from participating in the Food Stamp Program [1] for one year. Plaintiff moved for a Temporary Restraining Order and a Preliminary Injunction pending judicial review, requesting a stay of the disqualification penalty pending determination of the preliminary injunction or the merits of plaintiff's claim.

"During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's *likelihood of prevailing on the merits and of irreparable injury,* the court temporarily stays such administrative ac-

tion pending disposition of such trial or appeal."

7 U.S.C. § 2023(a) (Supp.1986).

Plaintiff's Motion for Preliminary Injunction [doc. # 6] was referred to Magistrate Judge William I. Garfinkel for a recommended ruling. After a hearing at which plaintiff presented witness testimony and both parties presented documentary evidence, the Magistrate Judge, in a bench ruling, recommended that plaintiff's Motion for Preliminary Injunction be denied.[2] Plaintiff has filed timely objection to the Recommended Ruling.

### FACTUAL BACKGROUND [3]

Plaintiff, Jose Morales ("Jose"), owns and operates Friendly's Market & Deli in Hartford, Connecticut, which was authorized to participate as a retail food store in the federal Food Stamp Program. Periodically, the FCS conducts investigations of authorized retail food stores, such as plaintiff's, in order to insure that the stores are not accepting food stamps as payment for ineligible items (such as non-food items), "major" ineligible items (such as alcohol and tobacco products), or exchanging food stamp coupons for cash, usually at a discounted rate of exchange (known as "trafficking"). In his application to participate in the Food Stamp Program, plaintiff agreed to prevent violations of the Program regulations, including not accepting food stamps as payment for ineligible items, or exchanging food stamp coupons for cash.

An undercover investigative aide from the FCS visited plaintiff's store on seven different occasions from August 16, 1996 through November 12, 1996. The parties agree that the FCS charges that on the occasions when the undercover investigative aide visited Friendly's Market & Deli, the clerk on duty, identified to be plaintiff's brother, Jesus Morales ("Jesus"), sold the aide certain ineligible items for food stamps, including cigarettes. On a November 12, 1996 visit, the

---

1. The FCS administers the Department of Agriculture's Food Stamp Program.

2. On March 31, 1998, plaintiff's Motion for Temporary Restraining Order was denied by endorsement order as moot and duplicative in light of the hearing held on plaintiff's Motion for Preliminary Injunction.

3. *See* parties' Joint Stipulation of Facts Not in Dispute and List of Exhibits [doc. 18].

undercover investigative aide offered to sell the clerk food stamps for cash, and the clerk refused.

The FCS mailed a "charge letter" to plaintiff on February 4, 1997, which detailed the alleged violations of the Food Stamp Program found at the store. Although plaintiff's counsel responded to that charge letter on February 13, 1997 requesting that the store not be considered for disqualification, plaintiff was notified on March 17, 1997 that he was disqualified from participation in the Food Stamp Program for one year. The letter from Thomas Andresen, Manager of Retail Operations of the Regional Office of the FCS, informed plaintiff that the disqualification decision was being made under 7 C.F.R. § 278.6(e)(4), which provides:

> (e) FNS shall take action as follows against any firm determined to have violated the Act or regulations... The FNS regional office shall:
>
> (4) Disqualify the firm for 1 year if it is to be the first sanction for the firm **and the ownership or management personnel of the firm have committed violations** such as the sale of common nonfood items in amounts normally found in a shopping basket, and FNS had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations.

(emphasis added).

Plaintiff's submissions during the administrative process repeatedly asserted in various forms that Jesus had no ownership or managerial relationship with the store and only filled in when plaintiff was out on store management duties. (Ex. 4, 6).

Nonetheless, on June 13, 1997, the disqualification determination was upheld by Patrick A. Frank, the ARO reviewing plaintiff's case, on the grounds that the violations took place at Friendly's Market & Deli and that the clerk involved, plaintiff's brother, qualified as part of the management of the store. The parties have agreed to suspension of the disqualification order pending ruling on Plaintiff's Motion for Preliminary Injunction.

## RECOMMENDED RULING

Ruling from the bench, the Magistrate Judge concluded that plaintiff failed to make a sufficient showing of likelihood of success on the merits that a violation of the Food Stamp Program did not occur. This is undisputably correct since plaintiff presented no evidence and appears not to dispute the existence of violations.

With respect to the one-year disqualification sanction, the Magistrate Judge found that while plaintiff may have presented some evidence to contradict the FCS' determination that Jesus Morales was part of the store's management, the standard of review was "arbitrary and capricious," "and that's an extremely difficult burden for the plaintiff challenging the agency's action." (1/20/98 Tr. at 106). Finding that there was a "significant amount of evidence" on the basis of which the FCS could have determined that plaintiff's brother was store management, even though he would not necessarily have come to the same conclusion, "but that's not my role as a reviewing court...", plaintiff failed to show a likelihood of success of overturning the disqualification sanction. (1/20/98 Tr. at 106). ("...the Court finds a substantial basis for the sanction...the agency determination was not arbitrary or capricious." (Recommended Ruling, doc. # 19, p. 2)). While assuming "significant hardship" for plaintiff if the disqualification sanction is imposed, the Magistrate Judge did not make a finding on the issue of irreparable harm in view of his finding that plaintiff had failed to show a likelihood of success on the merits.

## STANDARD OF REVIEW

■ The Food Stamp Act provides for judicial review of disqualification by "a trial de novo... in which the court shall determine the validity of the questioned administrative action in issue," 7 U.S.C. § 2023(a), in contrast to the more limited review under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). The Second Circuit has held that the district court is to "reexamine the agency's decision on a fresh record, rather than determining whether the administrative decision was supported by substantial evidence." *Ibrahim v. United States,* 834 F.2d at 53. In

conducting this "re-examination of the entire matter," the Circuit instructs that the district court " 'must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.' " *Id.* 834 F.2d at 53–54 (citations omitted).

The legislative history of 7 U.S.C. § 2023 distinguished between the Court's *de novo* factual review and its deferential review of the agency's choice of sanction:

> [T]he Committee does not intend that, in the trial *de novo* . . . the sanction or period of disqualification imposed would itself be subject to judicial review . . . the trial *de novo* . . . should be limited to a determination of the validity of the administrative action but not the severity of the sanction. Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of highly discretionary a[sic] sentence of disqualification is not.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 397–98; reported in 1977 U.S.Code Cong. and Admin. News 1704, 1978, 2326–27.

■ Thus, after *de novo* review of the factual evidence, including evidence not before the ARO, the district court determines only whether the sanction imposed was "arbitrary or capricious, i.e., whether it was unwarranted in law or without justification in fact." *Willy's Grocery v. United States,* 656 F.2d 24, 26 (2d Cir.1981).

In his Recommended Ruling, the Magistrate Judge considered the new evidence adduced at the hearing, suggested he might have come to a different conclusion from the ARO, but concluded that the agency had a substantial basis for finding that the violator, Jesus, was "within store 'management' ". "From the court's perspective, the agency determination was not arbitrary or capricious." (Recommended Ruling, doc. # 19, p. 2). In this admittedly difficult area of mixed standards of review, the Court concludes from the Recommended Ruling that the Magistrate Judge failed to distinguish between the *de novo* review of the facts upon which the sanction is predicated, and review of the sanction itself, and thus applied an erroneous "substantial evidence" standard to the factual assessment of whether Jesus was part of store management. *See Wong v. United States,* 859 F.2d 129, 132 (9th Cir. 1988). Accordingly, the Court reviews the hearing record *de novo* in accordance with this formulation.

## DISCUSSION

As previously noted, plaintiff does not challenge the ARO's, and the Magistrate Judge's conclusion, that violations of the Food Stamp Act occurred. In plaintiff's challenge to the propriety of the one-year disqualification sanction, he concedes as he must that close relatives, including his brother, operating as agents or employees of a store owner can be held to closer scrutiny in determining whether they are part of management, and that a clerk can be a *de facto* part of store management. However, he maintains that being a close relative working as a clerk is not an irrebuttable presumption of a *de facto* management role and that the preponderance of the evidence is that Jesus was not store management.

Defendant argues that the disqualification sanction was correctly found by the Magistrate Judge not to be arbitrary and capricious because the ARO followed the regulations that apply when management of the store is involved in the violations, that plaintiff incorrectly focuses on testimony at the hearing showing that Jesus Morales was not store management, which evidence was not before the ARO, and that the ARO's decision was properly based on the investigator's report of Jesus Morales' work hours under FCS policy. Defendant's view of the applicable evidentiary limitations is inconsistent with the Court's analysis of the applicable methodology of review here.

■ The hearing evidence shows that Jesus arrived from the Dominican Republic in 1994 and lived with his brother Jose, who provided for all his living necessities. In return, Jesus worked without compensation in Jose's store "because my brother [Jesus] is the only family I have here. That's the only people I trust. I can't let nobody behind the counter." (Tr. at 13). The store

was open every day of the week for long hours. Although Jose worked extensively at the store, he had no regular schedule and was frequently away from the store on errands to re-stock food stuffs, do banking, make payments, and perform other store-related functions. During such times, he would have Jesus work in the store alone. The only evidence of Jesus's duties was operating the cash register, cleaning, stacking groceries on shelves, and otherwise helping his brother, sometimes opening or closing the store. According to Jose's testimony, while he was out of the store, no one made any decisions; they had to wait for his return. There was no rebuttal to the testimony that it was Jose who made all the business decisions; he owned the store exclusively and was the sole person who decided what to buy for the store and where to buy it, how much rent to pay, what kind of advertising to do, what money to deposit or withdraw, what store hours would be, what furniture and shelf placement would be, what prices would be charged, and who would be hired. There was no evidence that Jesus had any authority to act independently in nay respect or that he did other than as told to do by plaintiff.

Neighbor Mr. Delgado confirmed that, in his frequent presence at the store, he never saw Jesus performing any management functions. Thus, the evidence supporting a determination that Jesus was a *de facto* manager was that he was plaintiff's brother, he was the only person plaintiff trusted to keep the store open in plaintiff's absence, he worked there frequently and long hours in plaintiff's absence, and plaintiff did not work there on a regular hourly schedule.

With respect to the sanction imposed on plaintiff, the ARO concluded:

It is my decision to sustain the one year disqualification at FRIENDLY'S MARKET AND DELI as proposed by the Wallingford office. This is in accordance with Section 278.6(e)(4) of Program Regulations which addresses violations by ownership or management of the firm. The Agency has determined that a clerk can be demonstrated to be part of management by his long hours of activity at the store on a regular basis. In absence of regular participation by Jose Morales, owner of the firm, Jesus becomes, defacto manager. During the investigation it was documented that Jesus has a regular work tour from 6:00 a.m. to 5:00 p.m. and that Jose does not have a regular work tour at the store.

Section 278.6(e)(4), title 7, of the Code of Federal Regulations provides for sanctioning by disqualification where the violations are committed by management, thus constituting "store policy," and heightened scrutiny of family members regularly involved in store operation is undisputedly reasonable for making this determination.

Further, to the extent that the agency has "determined" that a clerk's long, regular hours at a store can be a factor to be considered in determining whether that clerk is a part of management, such determination seems a reasonable interpretive aid if not applied conclusively, since that definition could subsume a substantial percentage of store clerks. There is no record of how this unidentified agency "determination" was arrived at or by whom. However, to the extent that the agency purports to have determined that a clerk who regularly works long hours at the store in the absence of the owner *is* store management, without any indicia of managerial authority or responsibility, it is not reasonable. Defendant maintains that such a sole person in the store, "plainly exercises management discretion as the senior employee on duty in the store." (Def. Mem. in Opp., p. 13). However, "management" means "the conducting or supervising of something (as a business); esp: the executive function of planning, organizing coordinating, directing, controlling, and supervising any industrial or business project or activity with responsibility for results." Webster's Third New International Dictionary, p. 1372. Thus, in order to serve the purpose of making the determination as to whether a member of management committed the violation, there must be some evidence of authority and responsibility, to distinguish between an hourly clerk, working regular long hours alone in a store, and a member of store management with the same characteristics. Indeed, in *Willy's Grocery v. United States,* 656 F.2d 24, the Second Circuit found the

violations of the non-owner, unpaid husband to constitute 'store policy' for sanction purposes, specifically noting that he had check-signing authority and had shared in store revenues.

In contrast, the record here lacks any such clear managerial indicators. Plaintiff's and Mr. Delgado's testimony described Jesus' functions as strictly non-managerial and was unrebutted. Defendant relies on the evidence that Jesus was the only one plaintiff trusted, that Jesus sometimes opened and closed the store for plaintiff, and that Jesus worked for long periods alone in the store. On this *de novo* review of the facts, the Court concludes that the evidence preponderates in favor of finding that Jesus was not store management such that his acts constituted "store policy." The Court is persuaded by the hearing evidence that more likely than not, Jesus was just a clerk doing the owner's bidding, without authority or responsibility to act on behalf of the store, but just to "run" it in plaintiff's absence, i.e., attend to customers, safeguard the premises, cleanup, etc. Thus, the Court concludes that the ARO's determination that Jesus, the violator, was part of the store's management was without "justification in fact." *Willy's Grocery v. United States of America*, 656 F.2d 24 (2d Cir.1981) (citations omitted).

Thus, the Court concludes that plaintiff has demonstrated a likelihood that the Court will find that the ARO's determination that Jesus Morales was store management was unwarranted and thus the disqualification sanction imposed would have been arbitrary and capricious.

■ Although the issue of irreparable harm was not addressed at the preliminary injunction hearing, plaintiff has submitted a statement from his bookkeeping service representing that the percentage of the store's yearly food stamps deposits were 60% of gross sales. (Pl.'s Ex. 6; Pl's Ex. E). The loss of 60% of one's business can constitute irreparable harm. *See Young Jin Choi*, 944 F.Supp. at 326, n. 2 (irreparable harm established where plaintiff's affidavit attested to a 40% loss of business if his store is disqualified); *Kim v. United States*, 822 F.Supp. 107, 110–11 (E.D.N.Y.1993) (irreparable harm established where plaintiff's affidavit attested to a 30% loss in gross weekly income and that this loss will force the store out of business); *Ibrahim v. United States*, 650 F.Supp. 163 (N.D.N.Y.), *aff'd*, 834 F.2d 52 (2d Cir.1987) (irreparable harm established where plaintiff's affidavit attests to a 30% loss of business). Accordingly, plaintiff has established that he will suffer irreparable injury if the preliminary injunction is not granted.

In sum, the Court concludes that plaintiff has demonstrated both irreparable harm and a likelihood on the merits such that the court will likely remand the disqualification penalty determination for reconsideration in light of the absence of "management" indicia showing Jesus to be store management such that his violations constitute store policy.

### Conclusion

Accordingly, plaintiff's objection to the Recommended Ruling is sustained, and plaintiff's motion for a preliminary injunction is GRANTED. The FCS is enjoined from enforcing plaintiff's disqualification for any period over six months (the period plaintiff asserts is the appropriate sanction under the circumstances of this case).

IT IS SO ORDERED.