693 F.2d 274
 Edward LAWRENCE and LCHE&N Grocery, Inc., d/b/a Lawrence
Deli, Plaintiffs- Appellees,
v.
UNITED STATES of America, United States Department of
Agriculture, Defendant- Appellant.
 No. 323, Docket 82-6139.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 22, 1982.
Decided Nov. 19, 1982.
 
 Winstanley F. Luke, Asst. U.S. Atty., E.D. New York, Brooklyn, N.Y. (Edward R. Korman, U.S. Atty., E.D.N.Y., Vivian Shevitz, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel) for defendant-appellant.
 Adolph H. Siegel, Lindenhurst, N.Y., for plaintiffs-appellees.
 Before OAKES and WINTER, Circuit Judges, and METZNER,* District Judge.
 WINTER, Circuit Judge:
 
 
 1
 The United States Department of Agriculture appeals from a judgment of the United States District Court of the Eastern District of New York entered after a trial de novo before Judge George C. Pratt. Judge Pratt reduced from one year to six months the period of disqualification imposed upon appellee by the Secretary of the Department of Agriculture for selling ineligible items in violation of Food Stamp Program regulations. Judge Pratt held that the one year disqualification was arbitrary and capricious because it violated the Secretary's own regulations. On appeal the government claims that Judge Pratt misinterpreted the Food and Nutrition Service ("FNS")[1] regulations which govern the penalties for sales of ineligible items under the Food Stamp Program. While we agree with the government and reverse the decision below, we admit to sharing much of Judge Pratt's confusion.
 
 
 2
 The facts in this case are not in dispute. Appellee Edward Lawrence,[2] and LCHE&N Grocery, Inc., d/b/a Lawrence Deli ("Lawrence Deli"), a retail food market, are authorized by the FNS to redeem food stamps. A routine computerized check indicated that the Deli's food stamp redemption rate for the fourth quarter of 1979 was unusually high compared to other stores in the area. An FNS representative was dispatched to speak to the Deli's manager in November, 1979. The representative suggested that the redemption rate might reflect a pattern of violations and explained the regulations concerning the sale of "ineligible" items. FNS and Lawrence then exchanged letters confirming the discussion.
 
 
 3
 After the warning visit, the FNS monitored the Deli closely for three months. During that time only one month's redemptions were excessive. After the monitoring period ended, however, the Deli's food stamp redemption rate increased again. The FNS then turned to undercover agents. Between February 3 and February 20, 1981, the agents made five visits to determine whether the Deli had a "policy" of selling ineligibles--a policy which would be established by four "clearly violative sales" involving the purchase of more than 30 percent ineligible items. See FNS Instruction 744-9 III B 1, III A 2(b). The investigators were able to purchase over 30 percent ineligible items with food stamps on each of their visits. Erika Lawrence, wife of the Deli's owner actually assisted in the sale during four of the five visits; on three of those occasions the agents bought six-packs of beer.
 
 
 4
 In March, 1981, the FNS notified Mr. Lawrence of the violations. Lawrence responded through his attorney that the violations, if any, did not reflect a store policy of disregarding the Food Stamp regulations. Nevertheless, the FNS Field Office recommended that the Lawrence Deli be suspended from the Food Stamp Program for one year. This recommendation was accepted by the FNS Coupon Use and Redemption Section in its report to the FNS Regional Office which also adopted the penalty.
 
 
 5
 Lawrence requested administrative review of the recommendation, claiming that a one-year suspension is warranted only when the offenses arise from a policy of violating the act, a policy which he again denied pursuing. Lawrence also asked that a monetary penalty be substituted in view of the hardship a suspension would work on local food stamp households due to the lack of alternate retail outlets in the area. The administrative review officer denied these requests and let the penalty stand.
 
 
 6
 Lawrence sought judicial review of this decision through a trial de novo in the federal courts. That trial was held on March 23, 1982 at which time Lawrence conceded that the violations had taken place as alleged. The sole issue before the District Court, therefore, was whether the FNS imposition of a one-year suspension as a penalty was arbitrary and capricious. Willy's Grocery v. United States, 656 F.2d 24 (2d Cir.1981) cert. denied 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982). Judge Pratt held the suspension "arbitrary and capricious" because the Secretary had violated his own regulations. Noting that the penalty section of the food stamp regulations, 7 C.F.R. Sec. 278.6(e)(2) (1982), directs the FNS to order a one-year suspension if the "firm's policy [is] to sell expensive or conspicuous non-food items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons," and that "policy" was defined as involving "four clearly violative sales of ineligible items" while the owner's spouse was involved in the operation of the store, FNS Instructions 744-9 III B 1(a), Judge Pratt held that a one-year suspension would not lie unless there had been four sales of "conspicuous non-food items, cartons of cigarettes or alcoholic beverages." Since there were only three sales of beer and no sales of cigarettes or of any items costing over five dollars, FNS Instruction 744-9 III A 2(a)(3) (defining major non-grocery-type ineligible items), Judge Pratt held that the requirements of 7 C.F.R. Sec. 278.6(e)(2) had not been met and that the penalty should be imposed under 7 C.F.R. Sec. 278.6(e)(3)(i), which mandates a six-month suspension for a policy of violation demonstrated by sales of common non-food items in amounts normally found in shopping baskets.
 
 
 7
 After scrutinizing FNS's labyrinthine regulations, we agree with the government that the one-year suspension is authorized. We set forth these regulations in some detail so as to reduce the almost unintelligible to the complex. 7 C.F.R. Sec. 278.6(e)(2) does provide that the FNS shall disqualify a firm for one year if, among other things, the evidence shows that "[i]t is the firm's policy to sell expensive or conspicuous non-food items, cartons of cigarettes, or alcoholic beverages, in exchange for food coupons, and the firm has engaged in such practices." The term "policy" as used in 7 C.F.R. Sec. 278.6(e) is defined in FNS Instruction 744-9 III B 1, which requires at least four "clearly violative sales of ineligible items" while a close relative of the owner was involved in the operation of the store. A "clearly violative" sale is defined by FNS Instruction 744-9 III A 2(b) as a transaction consisting of "approximately 30 percent or more ineligible items." Since Lawrence's wife was involved in four sales of 30 percent ineligible items, including beer and non-food products, the Lawrence Deli had a general policy to violate the Food Stamp Act, according to the FNS regulations.
 
 
 8
 However, having made that threshold determination, it is then FNS' settled practice to make a separate evaluation of whether or not the offending firm has a policy to sell "expensive or conspicuous non-food items, cartons of cigarettes, or alcoholic beverages" for purposes of 7 C.F.R. Sec. 278.6(e)(2). What constitutes an expensive or conspicuous non-food item appears to be covered by FNS Instruction 744-9 III A 2(a)(3) which is a non-exhaustive list of "major non-grocery-type ineligible items" including alcoholic beverages (but not single bottles of beer), cigarettes (but not less than 10 packs), gasoline in any amount, or "easily identifiable ineligible items costing in the range of $5 or more." What constitutes a policy to sell such items is covered by a separate definition of policy set forth in FNS Instruction 744-9 IV A 2(B)(1a). That section provides that a one-year disqualification from participation in the Food Stamp Program is required when:
 
 
 9
 It is the operating policy of the firm as defined in section III B 1, above, to sell ineligible items, and on three or more occasions personnel of the firms are found to have sold major non-grocery-type ineligible items as defined in section III A 2 a above.
 
 
 10
 In the present case, this means that four clearly violative sales, three of which included beer, merit a one-year suspension. In rendering his decision Judge Pratt apparently missed FNS Instruction 744-9 IV A 2(B)(1a) interpreting 7 C.F.R. Sec. 278.6(e)(2) via FNS Instruction 744-9 III B 1 and FNS Instruction 744-9 III A(2a). Thus, he seems, reasonably enough, to have believed that what was required in order to warrant a one-year penalty was a "policy" to sell alcoholic beverages and other major ineligibles demonstrated by at least four sales, instead of a "policy" to sell ineligibles (on at least four occasions), including a "policy" to sell alcohol (demonstrated by sales on at least three occasions). However, the latter and not the former is the settled policy of the Department of Agriculture and, however much violence it may do to section 278.6(e)(2), it does not transgress the arbitrary and capricious standard of Willy's Grocery, supra, because the Department (1) wrote it down and (2) uses it all the time and against everyone.
 
 
 11
 Lawrence also raises a claim that because the suspension works a hardship on local food stamp families, it should be reduced to a monetary penalty pursuant to 7 C.F.R. Sec. 278.6(g),[3] asserting that there is no factual basis in the record upon which to base a finding that there are authorized food stamp redemption outlets in the area selling a wide variety of staples at comparable prices. Judge Pratt held that the evidence did show other such stores in an approximately one-mile radius and the record amply supports his finding. We therefore affirm his refusal to substitute a monetary penalty but reverse his reduction of the suspension to six months and reinstate the Secretary's one-year suspension.
 
 
 
 *
 The Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The Food and Nutrition Service administers the Food Stamp Program on behalf of the Department of Agriculture pursuant to 7 C.F.R. Sec. 271.3 (1982)
 
 
 [2]
 Mr. Lawrence is president of Lawrence Deli
 
 
 [3]
 7 C.F.R. Sec. 278.6(g) states:
 Criteria for civil money penalty. FNS may impose a civil money penalty in lieu of disqualification only when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.