837 F.2d 95
 In the Matter of Farid M. ABDELAZIZ, Co-Owner, Abe Abraham,
Co-Owner, and Midland Meat Town, Inc., Plaintiffs-Appellants,
v.
UNITED STATES of America, Acting Through the DEPARTMENT OF
AGRICULTURE, Defendant-Appellee.
 No. 201, Docket 87-6035.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 20, 1987.
Decided Jan. 21, 1988.
 
 Robert H. Lawler, DeWitt, New York City, for plaintiffs-appellants.
 Constance A. Wynn, Appellate Staff Atty., Civ. Div., U.S. Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Washington, D.C.; Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Syracuse, N.Y., Robert S. Greenspan, Appellate Staff Atty., Civ. Div., U.S. Dept. of Justice, Washington, D.C., of counsel), for defendant-appellee.
 Before TIMBERS, WINTER and PRATT, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Farid M. Abdelaziz and Abe Abraham, at all pertinent times sole or co-owners of Midland Meat Town, Inc., personally purchased at a fifty percent discount food stamps for cash from an undercover police officer so their store could redeem the stamps at a profit. As a result, the Food and Nutrition Service ("FNS") disqualified them individually and their store from the food stamp program, a decision upheld by the district court. In this appeal, Abdelaziz and Abraham have raised a question as to whether the sanction of disqualification may be levied against them individually as well as against the corporate entity. This would seem a question that virtually answers itself. Those who unlawfully traffic in food stamps should not be allowed to continue their illegal ways simply by reincorporation. However, when the government addressed this question in its brief, it stated that Abdelaziz and Abraham were in fact neither charged with violations by the Food and Nutrition Service nor personally disqualified, the disqualification applying only to the firm. The government soon changed its mind, but only after transforming this into a case requiring some discussion. We affirm.BACKGROUND
 
 
 2
 The relevant facts can be briefly summarized. Midland Meat Town, Inc. is a medium-sized grocery store in an economically depressed neighborhood in Syracuse, New York. Abdelaziz and Abraham were co-owners of the store until November 1984, when Abraham purchased Abdelaziz's interest in the firm.
 
 
 3
 In December 1984, Abdelaziz and Abraham were arrested for misuse of food stamps in violation of N.Y. Soc. Serv. Law Sec. 147 (McKinney 1983). Both men subsequently entered guilty pleas to misdemeanor charges arising out of their trafficking in food stamps. The FNS thereafter wrote Abdelaziz that it was charging "you, doing business as Midland Meat Town, Inc." with unlawful trafficking in food stamps in violation of 7 C.F.R. Sec. 278.2(a) (1985). The letter recited that on March 19, 1984, Abdelaziz had accepted $280 in food stamps from an undercover officer in exchange for $140 in cash, and that on May 8, 1984, both Abdelaziz and Abraham had similarly exchanged $300 in stamps for $150 in cash. The letter stated, "[y]our store is being considered for disqualification from the Food Stamp Program."
 
 
 4
 The Food Stamp Act provides that disqualification of a retail store shall be "permanent upon the first occasion of a disqualification based on the purchase of coupons or trafficking in coupons." 7 U.S.C. Sec. 2021(b)(3) (1982). On March 6, 1986, the FNS notified Abdelaziz and Abraham (whose sudden emergence as a party to the proceeding is unexplained but fortunately not disputed) that the "Midland Meat Town, Inc., under the co-ownership of Farid M. Abdelaziz and Abe Abraham," was being permanently disqualified from participation in the food stamp program. An FNS Review Officer subsequently denied a request to lift the disqualification, stating, "the decisions by the Northeast Regional Office to disqualify Midland Meat Town, Inc., Syracuse, New York from permanent participation are ... sustained."
 
 
 5
 Notwithstanding that the disqualification letter of March 6, 1986 was seemingly limited to the corporation, Abdelaziz, and Abraham, as well as Midland Meat Town, Inc., sought judicial review of the FNS decision, and, pursuant to 7 U.S.C. Sec. 2023(a) (Supp. IV 1986), a trial de novo was held before Judge McAvoy, who upheld the disqualification as to Abdelaziz and the corporation. He reserved decision as to Abraham, however, who testified that he had not intended to purchase food stamps from the undercover female officer, that he had never seen food stamps in the officer's possession, and that he had given the $150 in cash to Abdelaziz so that Abdelaziz could have a "good time" with the officer. In a subsequent opinion, Judge McAvoy held that Abraham had knowingly trafficked in food stamps and was thus properly disqualified from participation in the food stamp program. Specifically, the court found that "Abdelaziz and Abraham shared direction and control of the corporation and acted as its agents in all matters, including the handling of food stamps," and that Abraham, contrary to his testimony, had handed the $150 directly to the officer. Judge McAvoy clearly intended to disqualify Abdelaziz and Abraham as well as the corporation.
 
 
 6
 On appeal, Abdelaziz and Abraham filed a short brief that raised statutory and due process issues, both meritless and both disposed of infra. As a final issue, the following point, quoted in full, was made:
 
 POINT III
 
 7
 IT WAS IMPROPER TO ENFORCE PERMANENT SANCTIONS AGAINST APPELLANTS ABDELAZIZ AND ABRAHAM.
 
 
 8
 1. The Food Stamp Program Regulations provide at page 20, section 278.6(B) for a charge letter against "any firm considered for disqualification or imposition of a civil money penalty."
 
 
 9
 Nowhere in the regulations is provision made for such a charge letter against the individual appellants Abdelaziz and Abraham who at the time of the alleged trafficking were officers and shareholders of the firm. They were not individually authorized to deal in food stamps.
 
 
 10
 By reason of the foregoing the charges against the individuals Abdelaziz and Abraham and resulting permanent sanctions should be dismissed.
 
 
 11
 This argument appears never to have been made before either the FNS or the district court. It also seems a less-than-overpowering argument in circumstances where the undisputed owners of a "firm" personally purchased food stamps so that the "firm" could redeem them at a profit going directly into their pockets. Nevertheless, the government's brief responded to appellants' "POINT III" as follows, also quoted in full:
 
 
 12
 Plaintiffs, as their final argument, contend that the FNS improperly brought charges against them as individuals. Plaintiffs' assertions are baseless. Of course the charge letter was addressed to plaintiffs as they were co-owners of the store. However, the charge letter (App. 2-3) and the final disqualification decision of the review officer (App. 14-15) clearly stated that it was the store that was being disqualified from participation in the food stamp program.
 
 
 13
 Given that its brief concluded by asking that the district court's judgment be affirmed, the government apparently did not realize at the time of writing that its response to "POINT III" mandated reversal as to Abdelaziz and Abraham. Moreover, by disclaiming that Abdelaziz and Abraham had even been charged with a violation, the brief created a potential issue as to whether Abdelaziz and Abraham had even been given notice of the charges against them. At oral argument, counsel for the government disavowed the quoted portion of its brief and asked for time to submit a supplemental letter brief after consulting with the Department of Agriculture. Not surprisingly, that letter brief argues for affirmance.
 
 DISCUSSION
 
 14
 Congress has authorized the Secretary of Agriculture to regulate strictly "retail food stores and wholesale food concerns" allowed to accept and redeem food stamps. See 7 U.S.C. Sec. 2018(a) (1982). Before qualifying a firm to redeem stamps, the FNS considers various matters pertinent to the business integrity and reputation of the applicant. The Secretary is also authorized to disqualify a previously approved "retail food store or wholesale food concern" for violations of the Food Stamp Act or FNS regulations. 7 U.S.C. Sec. 2021 (1982 & Supp. IV 1986); 7 C.F.R. Sec. 278.6(a) (1987). In 1982, in order to curb a reported one thousand percent increase in such violations over the previous five year period, Congress mandated automatic permanent disqualification for trafficking in food stamps. See S. Rep. No. 504, 97th Cong., 2d Sess. 62-64, reprinted in 1982 U.S.Code Cong. & Admin.News 1641, 1700-02.
 
 
 15
 The only statutory guidance regarding the issue before us appears to be Section 2021(e)(1), which provides:
 
 
 16
 (1) In the event any retail food store or wholesale food concern that has been disqualified under subsection (a) of this section is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or persons who sell or otherwise transfer ownership of the retail food store or wholesale food concern shall be subjected to a civil money penalty in an amount established by the Secretary through regulations to reflect that portion of the disqualification period that has not yet expired. If the retail food store or wholesale food concern has been disqualified permanently, the civil money penalty shall be double the penalty for a ten-year disqualification period, as calculated under regulations issued by the Secretary. The disqualification period imposed under subsection (b) of this section shall continue in effect as to the person or persons who sell or otherwise transfer ownership of the retail food store or wholesale food concern notwithstanding the imposition of a civil money penalty under this subsection.
 
 
 17
 Because this provision allows a previously disqualified store to be qualified under new ownership while transferring the disqualification to the previous owner, it evidences at the very least Congress's expectation that some owners might be personally disqualified. The statute is fraught with ambiguities, however, particularly with regard to multi-store ownership situations or passive investors.
 
 
 18
 Apart from bringing our attention to Section 2021(e)(1), the FNS' letter brief adds little. Although it refers to an "FNS policy to permanently disqualify the owners of stores who traffic in food stamps," the reference lacks any citation to legal authority. Later, the letter brief states, "The agency ... has construed 'retail food store' to include the management of the enterprise committing the violation." This statement also lacks any citation to legal authority except for a footnote stating enigmatically that the FNS' interpretation is "reflected" in agency regulations that use the undefined word "firm" as well as the statutory language "retail food store" and "wholesale food concern."
 
 
 19
 Lacking clear guidance, we decline to adopt a broad rule concerning the disqualification of owners of stores that unlawfully traffic in food stamps. Instead, we rely on the established principle that the corporate form should be disregarded "where it is interposed to defeat legislative policies." First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611, 630, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983). Congress has repeatedly expressed its concern that trafficking in stamps was undermining the goals of the food stamp program. See H.R.Rep. No. 271, 99th Cong., 1st Sess. 156, reprinted in 1985 U.S.Code Cong. & Admin.News 1103, 1260; S. Rep. No. 504, 97th Cong., 2d Sess. 62-64, reprinted in 1982 U.S.Code Cong. & Admin.News 1641, 1700-02. Abdelaziz and Abraham, as Judge McAvoy found, "shared direction and control of the corporation and acted as its agents in all matters, including the handling of food stamps." In addition, both men personally trafficked in food stamps. In similar circumstances, we have disregarded the corporate form where a federal statute's effectiveness would otherwise be undermined. See Lowen v. Tower Asset Management, Inc., 829 F.2d 1209, 1221 (2d Cir.1987) (failure to disregard corporate form where owners personally and actively controlled corporation and directed unlawful investments would undermine ERISA). Accordingly, in order to promote the congressional purpose of preventing fraud in that program, we hold that the permanent disqualification of Abdelaziz and Abraham from participation in the food stamp program was appropriate, given their operational control of Midland Meat Town, Inc. and their personal involvement in food stamp trafficking.
 
 
 20
 We note, however, that the FNS would be well-advised to address the issue of personal disqualification of store owners by way of regulation. A disqualification may impose substantial economic consequences on individuals and even result in depriving them of their livelihood. Such consequences should have a legal basis of greater substance than has been provided by the government in the two opportunities it has had to brief this case. We also note that the forms used to give notice of charges and to disqualify should indicate with greater clarity exactly which entity and individuals are involved. Abraham appears not to have been formally charged, and the attorneys who wrote the government's original brief understood the documents in question as charging and disqualifying only the store. However, because both Abdelaziz and Abraham brought the action in the district court, no claim of lack of notice regarding the charges was raised, and their counsel clearly understood them to be personally disqualified, we must affirm.
 
 
 21
 We may quickly dispose of appellants' other contention, namely that the district court's de novo review of the FNS decision was inappropriate in scope and did not afford appellants due process. In Ibrahim v. United States, 834 F.2d 52 (2d Cir.1987), we held that the Food Stamp Act requires the district court to reexamine the agency's decision on a fresh record, as happened in the instant case, rather than to determine whether the administrative decision was supported by substantial evidence. We further held that such review affords due process.
 
 
 22
 Affirmed.