**Saleh AHMED, d/b/a Martinez Grocery, Plaintiff,**

v.

**UNITED STATES of America, United States Department of Agriculture, Food and Consumer Service, Defendants.**

**No. 98–CV–6601L.**

United States District Court, W.D. New York.

April 30, 1999.

Paul M. Fioravanti, Rochester, NY, for plaintiff.

Brian M. McCarthy, Asst.U.S.Atty., Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Saleh Ahmed brings this action pursuant to 7 U.S.C. § 2023(a). Pending before this Court is plaintiff's motion for a preliminary injunction, seeking to enjoin the enforcement of a final determination issued by the United States Department of Agriculture, Food and Nutrition Service [1] ("FNS" or "the Agency") permanently disqualifying his retail food store, Martinez Grocery, from participating in the Food Stamp Program. Plaintiff's motion for a preliminary injunction is granted.[2]

## BACKGROUND

Martinez Grocery ("the store"), a small grocery store in Rochester, New York, was authorized by the FNS to accept food stamps. Plaintiff has asserted that 50% of the store's revenue involved food stamp transactions. The store was operated by plaintiff and managed by Saeed Saleh. Plaintiff also employed one or two additional employees.

On April 8, 1998, an FNS investigator entered the store and exchanged $100 worth of food stamp coupons for $50.00 in cash.[3] The clerk who participated in the

---

1. The agency that administers the Food Stamp Program has undergone several changes in nomenclature. Originally administered by the Food and Nutrition Service, this agency was abolished during a reorganization of the Department of Agriculture in 1994. The Food and Consumer Service was established, and assumed the functions of the defunct agency. 59 Fed.Reg. 60,061, 60,062 (1994). In November 1997, the Secretary of Agriculture changed the name of the agency back to its former name, the Food and Nutrition Service. Revision of Delegations of Authority, 63 Fed.Reg. 35,787 (1998) (to be codified at 7 C.F.R. pt. 2).

2. At oral argument, the parties agreed that a factual hearing would not be necessary.

3. The investigator's written account of this transaction is undisputed. The transaction report indicated: "I said, 'I got $100.' I gave

transaction was later identified by the FNS as Saleh Saleh,[4] plaintiff's cousin. Plaintiff was sent a letter dated June 17, 1998 ("charge letter"), indicating that he was being charged with food stamp trafficking. In at least six years of participation in the Food Stamp Program, this was the first time plaintiff's store was cited for any violation. The charge letter warned that the sanction for this violation would be permanent disqualification or, if appropriate, a civil money penalty ("CMP"). The charge letter referenced the criteria for CMP eligibility, purported to enclose a copy of the applicable regulations, and stated that plaintiff's request for a CMP in lieu of permanent disqualification must be submitted to the FNS within ten days of the receipt of the letter.

Saeed Saleh received the charge letter while plaintiff was out of the country. Saleh, acting on plaintiff's behalf, timely filed an affidavit responding to the charge letter. Saleh denied the allegations in the charge letter, and stated that neither he nor plaintiff committed or benefitted from any acts in violation of the Food Stamp Program. Saleh averred that as manager, he had developed an effective compliance policy to prevent food stamp violations and that this compliance policy was in effect prior to the occurrence of the alleged violation. Specifically, Saleh stated that both he and plaintiff personally trained employees and that he often advised employees of the food stamp regulations in both English and Arabic.

Plaintiff was notified in a letter dated September 14, 1998, that the FNS had found the occurrence of the "violations" articulated in the charge letter, and that he was ineligible for a CMP under 7 C.F.R. § 278.6(i). Accordingly, plaintiff was notified that Martinez Grocery, under his ownership, was permanently disqualified from participation in the Food Stamp Program. This determination also contained a "Bill for Collection" seeking compensation for the $100.00 "loss to the Government." Plaintiff requested administrative review of this disqualification, attaching a copy of Saleh's previously submitted affidavit. An Administrative Review Officer ("ARO") sustained the permanent disqualification and the $100.00 fiscal claim.

## DISCUSSION

### A. The Food Stamp Statute

The Food Stamp Program was borne of the Food Stamp Act of 1964. 7 U.S.C. §§ 2011 *et seq.* Congress has on several occasions addressed the issue of the exchange of food stamp coupons for cash, or "trafficking."[5] Currently, section 2021(b)(3)(B) of the Food Stamp Statute mandates permanent disqualification or the imposition of a CMP where a retailer traffics in food stamp coupons:

> Disqualification ... shall be ... (3) permanent upon ... (B) the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons ... except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 for each violation (... civil money penalties imposed for violations occurring during a single in-

---

clerk stamps. Clerk counted stamps. Clerk opened register and removed cash. Clerk gave me cash. I said, 'Thanks' and departed store."

**4.** FNS documents refer to the clerk as "Salh Salh." According to plaintiff, the proper spelling is "Saleh Saleh." Although not mentioned in plaintiff's submission to the Court, plaintiff's counsel stated during oral argument that this employee was no longer working at the store.

**5.** "Trafficking means the buying or selling of coupons, ATP cards or other benefit instrument for cash or consideration other than eligible food; or the exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for coupons." 7 C.F.R. § 271.2.

vestigation may not exceed $40,000) in lieu of disqualification under this subparagraph, ... if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations, including evidence that—

(i) the ownership of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; and

(ii)(I) the management of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation; or

(II) the management was aware of, approved of, benefited from, or was involved in the conduct of no more than 1 previous violation by the store or food concern. . . .

Originally, the Food Stamp Act of 1964 left the issue of disqualification for trafficking violations to the discretion of the Secretary of Agriculture. *See Ghattas v. United States*, 40 F.3d 281, 283–84 (8th Cir.1994) (thoroughly discussing statutory history of Food Stamp Program). In 1982, Congress amended the statute to mandate permanent disqualification for all trafficking violations. Omnibus Budget Reconciliation Act of 1982, Pub.L. No. 97–253, § 175, 96 Stat. 763, 781 (1982). Congress returned some level of discretion to the Secretary via the Hunger Prevention Act of 1988, amending the Food Stamp Act to include the possibility of a CMP of up to $20,000 for trafficking violations if "the Secretary determines that there is substantial evidence ... [of] an effective policy and program in effect to prevent violations." Pub.L. No. 100–435, § 344, 102 Stat. 1645, 1664 (1988).

In response to this congressional mandate, the FNS promulgated regulations that, among other requirements, established the criteria for the eligibility for a CMP in lieu of permanent disqualification for trafficking violations. *See* Civil Money Penalties in Lieu of Permanent Disqualification for Trafficking, 55 Fed.Reg. 31,809 (1990). In 1990, Congress again amended the statute to include language requiring the Secretary to consider evidence of knowledge of the violation by the store's ownership or management.[6] Mickey Leland Memorial Domestic Hunger Relief Act, Pub.L. No. 101–624, § 1743, 104 Stat. 3359, 3795 (1990). The statute was amended to its present form in 1996. Federal Agriculture Improvement and Reform Act of 1996, Pub.L. No. 104–127, § 401, 110 Stat. 888, 1026 (1996).

## B. Regulations Implementing the Food Stamp Program

The regulations implementing the Food Stamp Program provide that a food store (or "firm") that engages in trafficking is subject to permanent disqualification from participation in the Food Stamp Program. *See* 7 C.F.R. § 278.6(a). In lieu of permanent disqualification, the FNS "may impose a civil money penalty ... in accordance with the provisions of § 278.6(i) and § 278.6(j)." *Id.* According to section 278.6(i), to be eligible for a CMP a food store must "at a minimum" establish "by substantial evidence" four criteria:

Criterion 1. The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and

Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred *prior* [emphasis

---

**6.** The amended statute gave the Secretary the discretion to impose a CMP where:

[T]he Secretary determines that there is substantial evidence (including evidence that neither the ownership nor management of the store ... was aware of, ap-

proved, benefited from, or was involved in the conduct or approval of the violation) that such store ... had an effective policy and program in effect to prevent violations. . . .

in original] to the occurrence of violations cited in the charge letter sent to the firm; and

Criterion 3. The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and

Criterion 4. Neither firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations .... [7]

Pursuant to section 278.6(a)(2)(ii), a food store requesting a CMP in lieu of permanent disqualification must submit the materials specified in section 278.6(i) ten days from the receipt of a "charge letter" from the FNS specifying the violations. 7 C.F.R. § 278.6(a)(2)(ii).

## C. Standard of Review

▆ A party seeking to enjoin "governmental action taken in the public interest pursuant to a statutory or regulatory scheme" must show irreparable harm and a likelihood of success on the merits. *Sal Tinnerello & Sons, Inc. v. Town of Stonington,* 141 F.3d 46, 52 (2d Cir.1998) (quoting *Plaza Health Lab., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989)). This standard is codified in section 2023(a)(17) of the statute. 7 U.S.C. § 2023(a)(17) (A court may temporarily stay an administrative action after a hearing and consideration "of the applicant's likelihood of prevailing on the merits and of irreparable injury."); *see Castillo v. United States,* 989 F.Supp. 413, 417 (D.Conn.1997); *Young Jin Choi v. United States,* 944 F.Supp. 323, 324–25 (S.D.N.Y.1996).

## D. Likelihood of Success on the Merits

▆ Pursuant to 7 U.S.C. § 2023(a)(15), the "validity of the questioned administrative action in issue" shall be determined in a "trial de novo." In reviewing FNS action, the Second Circuit applies a bifurcated standard of review. While factual determinations are reviewed de novo, an FNS penalty determination is reviewed under the arbitrary or capricious standard, that is, whether the determination is "unwarranted in law or without justification in fact." *Willy's Grocery v. United States,* 656 F.2d 24, 26 (2d Cir.1981) (citations omitted); *see Lawrence v. United States,* 693 F.2d 274, 276 (2d Cir.1982). The Court is now faced with the task of determining whether plaintiff is likely to prove that the sanction imposed by the Secretary was arbitrary or capricious. Based on the record before the Court, the answer must be yes.

**1. Likelihood that Plaintiff will Prove that the Permanent Disqualification Sanction was Unjustified in Fact**

▆ The administrative record contains several factual inaccuracies, which lead the Court to conclude that it is likely that the decision to permanently disqualify plaintiff from participation in the Food Stamp Program was not justified in fact. Review of the ARO's November 24, 1998 decision reveals several relevant errors. For example, the ARO referred to "violations" and "incidents," suggesting that the ARO believed that the "investigation" of plaintiff's store consisted of more than just one visit and documented more than just one instance of trafficking. ARO Decision, p.

**7.** In response to the 1996 statutory amendments (*See* Federal Agriculture Improvement and Reform Act of 1996, § 401, 110 Stat. at 1026.), the FNS proposed the following change to criterion 4:

> Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it is only the first occasion in which a member of firm

management was aware, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm....

Retailer Integrity, Fraud Reduction and Penalties, 63 Fed.Reg. 24,985, 24,994 (1998) (proposed rule). According to the proposed rule, this change has already been implemented in practice via an implementing memorandum issued by the FNS on September 16, 1996. 63 Fed.Reg. at 24,988.

2. The ARO also suggested that plaintiff submitted no documentation to support his request for a CMP in lieu of permanent disqualification. *See* ARO Decision, p. 4. Setting aside the issue of whether the documentation submitted by plaintiff was sufficient to fulfill the regulatory requirements for CMP eligibility, it is undisputed that plaintiff submitted an affidavit in support of his request for a CMP within the time frame specified in the regulations. Although the ARO apparently relied on manager Saleh's affidavit in the formulation of his factual summary, the ARO's failure to address the sufficiency of the affidavit, or to mention its existence, suggests that the ARO neglected to even consider the affidavit in determining whether plaintiff was eligible for a CMP.

The ARO also indicated that he reviewed the administrative records that "comprised the basis for the earlier decision," and that the decision of the Regional Office/Field Office ("RO/FO") was entitled to a level of deference. ARO Decision, p. 1–3. Specifically, the ARO held that plaintiff must show by a *"substantiality of the evidence"* that "the information or evidence upon which the RO/FO has reached its determination, or the determination itself, is, in the view of responsible persons giving serious consideration to important matters, so unbelievable, unreliable, untenable, or unreasonable, that it should be set aside." ARO Decision, p. 3 (emphasis in original). Given this level of deference, it is disturbing that the record on which the RO/FO relied also contains many factual errors. The first example of these errors is a July 7, 1998 document that appears to be a printout of a computer data entry screen, entitled "Investigation/Fiscal Sanction Determination System" ("Determination System Document"). Under the category "Was the owner or manager involved?" "manager" is selected. Under retailer response "none" is listed, although "6/29/98" is handwritten next to the entry. These errors are highly significant. Section 278.6(i) declares a firm ineligible for a CMP where firm management is involved in the trafficking violation. 7 C.F.R. § 278.6(i). This unsubstantiated indication of managerial involvement suggests that during the Agency's initial review process, the store was considered per se ineligible for a CMP.[8] Moreover, section 278.6(a)(2)(ii) requires that a store must request a CMP and submit supporting materials within ten days of its receipt of a charge letter. 7 C.F.R. § 278.6(a)(2)(ii). An indication that no retailer response was received suggests that the Agency proceeded as if the store did not request a CMP. Such an assumption may have been disastrous to plaintiff's claim, since a firm that does not request a CMP cannot receive one. The handwritten date in the margin, "6/29/98," is the same date as plaintiff's affidavit. Yet a handwritten notation on what appears to be a static data entry form does little to persuade the Court that plaintiff's submission was actually considered in the Agency's initial evaluation.

Another document entitled "Trafficking CMP Criteria," also dated July 7, 1998, lists the following information:

NO    Did the firm have an effective compliance policy?

8. As discussed in footnote 7, the FNS proposed changes to Criterion 4, which allow the imposition of a CMP even where firm management may be involved, as long as firm management was not involved in previous trafficking violations. Although the FNS claims in its 1998 proposed rulemaking that it has implemented these congressionally mandated changes in practice, the type of data that can be entered on the Determination System Document suggest otherwise. *See* 63 Fed.Reg. at 24,988. Although there is a space to enter the number of previous program violations, the form does not specify whether the previous violations involved trafficking, or whether a previous trafficking violation involved a manager. This suggests that the Agency continues to consider a store per se ineligible for a CMP where a manager is involved in the trafficking violation.

NO    Was the policy in operation prior to the occurrences of the violations cited?

NO    Did the firm have an effective personnel training program?

YES    Was firm management or ownership aware of or involved in trafficking?

YES    Or did firm management or ownership benefit from or approve of trafficking?

The document states, "[b]ased on the above criteria, a CMP is not the appropriate penalty because the firm does not meet the qualifications," and concludes, "Determination: Permanent Disqualification." The document is signed by a Food Program Specialist, and authorized by the "OIC," or Officer in Charge.[9]

This document is distressing for several reasons. First, when considered in conjunction with the Determination System Document, the Trafficking CMP Criteria Document suggests that plaintiff's affidavit was not considered at all in the Agency's determination. Second, compounding the error in the Determination System Document, the Trafficking CMP Criteria Document indicates that plaintiff was aware of or involved in the trafficking violation, and that he benefitted from the trafficking. There is no evidence to support those conclusions. As discussed above, this factual error most likely had serious repercussions when the FNS considered whether plaintiff was eligible for a CMP.[10]

Both of these documents suggest a mere cursory review by the FNS of plaintiff's application for a CMP. This lack of considered review may have allowed mistakes made during the initial assessment of plaintiff's request for a CMP to be perpetuated as plaintiff's case made its way through the Agency. A memorandum entitled "Explanatory Note," dated merely "7/14," was sent to Thomas W. Andresen, the signatory on the September 14, 1998 letter sent to plaintiff notifying him of his permanent disqualification. The memorandum notes that "[t]he retailer didn't submit required info for a CMP" and that "permanent disqualification is warranted in this case." [11] With no apparent additional consideration, Mr. Andresen issued what appears to be a form letter permanently disqualifying plaintiff from participation in the Food Stamp Program. Although the September 14, 1998 letter suggests that the Agency considered plaintiff's eligibility for a CMP, the substance of the letter largely parrots language in the regulations:

> [T]here is *not* substantial evidence that your firm had an effective policy and

**9.** The record does not identify the acronym "OIC," however, it is reasonable to assume that the term refers to "Officer in Charge." *See Dalton v. United States*, 816 F.2d 971, 972–73 (4th Cir.1987) (referring to Officer in Charge of the Field Office as "OIC").

**10.** The final two questions on the Trafficking CMP Criteria Document further suggest that the FNS has ignored the statutory changes implemented via the Federal Agriculture Improvement and Reform Act of 1996. *See* footnotes 7, 8. Both questions group together firm management and ownership. Yet the statute distinguishes between a store owner's knowledge of trafficking and a store manager's knowledge of trafficking. *Compare* 7 U.S.C. § 2021(b)(3)(i) (ownership of store was not aware of the violation), *with* 7 U.S.C. § 2021(b)(3)(ii)(I) & (II) (manager was aware of no more than one previous violation). The

FNS proposed rule also makes this distinction. 63 Fed.Reg. at 24,994. The language in the Trafficking CMP Criteria Document again belies the Agency's assertion made in the proposed rulemaking that this congressional mandate has been implemented in practice.

**11.** This memorandum also states "[t]his case is part of spring clean." Although the record does not indicate the definition of "spring clean," the government indicated at oral argument that this was a reference to an FNS enforcement effort. Without question, the enforcement program that led to the underlying investigation of a charged store is completely irrelevant to the issue of whether a store is eligible for a CMP. It is of great concern that this fact is even mentioned in a memorandum recommending a penalty determination.

program in effect to prevent trafficking violations as specified in Criterion 1. Criterion 2 specifies that the policy and program shall have been in effect prior to the occurrence of the violations. Criterion 3 specifies that the firm must have developed and instituted an effective personnel training program. You did not submit any training curricula, records of dates training sessions were held or documentation establishing that you trained the violating employee. Therefore, we have determined that you are not eligible for the CMP.

(emphasis in original). While the letter is quick to point out what plaintiff *failed* to submit, there is no discussion of the content of plaintiff's affidavit. This omission suggests that the content of plaintiff's submission was again overlooked or rejected out of hand.

### 2. Likelihood that Plaintiff Will Prove that the Permanent Disqualification Sanction was Unwarranted in Law

As previously discussed, the Hunger Prevention Act of 1988 mandated that the Agency consider the imposition of a CMP where there was substantial evidence that a store had an effective policy and program in effect to prevent violations. § 344, 102 Stat. at 1664. It is likely that plaintiff can show that the criteria established by the FNS in response to this congressional mandate were applied to plaintiff in an arbitrary or capricious manner.

Although the regulatory criteria for establishing eligibility for a CMP "appear[ ] to favor written documentary evidence of the compliance policy," the regulations also allow the Agency to consider other types of evidence. *Castillo*, 989 F.Supp. at 418.

Under Criterion 1 and Criterion 2, the firm must establish the existence of an effective compliance policy and that this policy was in effect at the time of the violation. 7 C.F.R. § 278.6(i). In addition to the written and dated statements of firm policy specified in 7 C.F.R. § 278.6(i)(1),[12] the regulations also allow the FNS to consider: 1) "[t]he nature and scope of the violations charged against the firm"; 2) "[a]ny record of previous firm violations under the same ownership or management"; and 3) "[a]ny other information the firm may present to FNS for consideration." 7 C.F.R. §§ 278.6(i)(1)(iv)–(vi). It appears that the Agency ignored this criteria in reaching its decision.

For example, plaintiff's store was charged with only *one* instance of trafficking. Following a single investigatory visit by an FNS agent, the agent was able to exchange $100 in food stamp coupons for $50 in cash. Yet the Agency apparently made no distinction between one trafficking offense and many such offenses. The ARO held that "[n]either the Food Stamp Act Amendments of 1982 nor the regulations issued pursuant thereto cite any minimum dollar amount of cash or food stamp coupons, or number of occurrences, for such exchanges to be defined as trafficking." ARO Decision, p. 4. While it is true that food stamp trafficking should not be taken lightly, the FNS's failure to weigh the singular nature of the violation committed at plaintiff's store appears to be in contravention of section 278.6(i)(1)(iv). It also appears that, contrary to section 278.6(i)(1)(v), the FNS failed to consider the store's clean record with the FNS. Finally, from the time of plaintiff's first

---

12. Section 278.6(i)(1) provides in part:
As specified in Criterion 1 above, in determining whether a firm has established an effective policy to prevent violations, FNS shall consider written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent with this Part 278 of current FSP regulations and current FSP policy on the proper acceptance and handling of food coupons. As required by Criterion 2, such policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation.

submission to the FNS, the Agency failed to consider store manager Saleh's affidavit in support of the store's request for a CMP. This affidavit, which at the very least qualifies as "other information" under section 278.6(i)(1)(vi), appears to have been rejected by the Agency with little, if any, consideration or explanation. The Agency's policy here seems to be unduly harsh, and runs contrary to congressional intent in implementing the Hunger Prevention Act of 1988. "The permanent disqualification of retail food stores upon the first trafficking offense—without any evaluation of preventive measures taken or complicity in the trafficking—seems excessively harsh." H.R.Rep. No. 100–828, pt 1, at 27 (1988).

Criterion 3 requires that the firm institute an effective personnel training program. Specifically, section 278.6(i)(2) requires in part that:

> [T]he firm shall have developed and implemented an effective training program for all managers and employees on the acceptance and handling of food coupons in accordance with this Part 278. A firm which seeks a civil money penalty in lieu of a permanent disqualification shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)....

The proof necessary to establish such a program is onerous and unrealistic when applied to a small business with only one or two employees. The FNS requires contemporaneous documentation of the violating employees participation in any training held prior to the violations, as well as the use of written material. These documents, including dated training curricula and training dates, must be submitted to the FNS within ten days of the receipt of a charge letter. 7 C.F.R. § 278.6(i)(2). These regulations appear to run contrary to congressional intent to "expand[ ] the types of evidence that can be used to show that a fine is more appropriate than permanent disqualification." [13] H.R.Conf.Rep. No. 101–916, at 1098 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5286, 5623. Moreover, "[t]hese elaborate requirements ... seem unsuitable for a one-clerk store in a low income trade area." *Ghattas,* 40 F.3d at 285. The signed and dated affidavit submitted by manager Saeed Saleh established that he and plaintiff trained employees in both English and Arabic. This affidavit, coupled with the store's previously spotless record in the Food Stamp Program, suggests that the store did in fact have an effective training program. It is likely that plaintiff will show that the FNS's failure to consider this program in determining whether the store was eligible for a CMP was arbitrary or capricious.

Furthermore, the record does not indicate that the store was ever apprised of its obligation to keep "contemporaneous" training records until after the FNS refused to consider the store's training program in evaluating its eligibility for a CMP. During oral argument the attorney for the Agency could point to no FNS communication, other than the regulations addressing eligibility for a CMP, advising small businesses of their obligation to keep

---

**13.** Congress suggested that:

[e]xamples of an effective policy and program to prevent violation of the Act or regulations by a store or concern might include the following: (i) effective written policies and procedures to be followed by store personnel that are consistently applied by management, (ii) initial training of store manager and employees in the proper handling of food stamps; (iii) periodic oversight and continuing education of store personnel in the proper handling of food stamps; and (iv) other reasonable and good faith efforts that demonstrate the existence of an effective policy and program by the store or concern to prevent violations of the act or regulations. H.R.Rep. No. 100–828, pt. 1, at 27 (1988).

contemporaneous training records. In addition, it appears that such records are not normally required in the course of participation in the Food Stamp Program. *See* 54 Fed.Reg. 18,641, 18,643 (1989) ("None of the information necessary to document the existence and operation of such policies and programs to prevent violations is readily available to FNS through the normal system of records that are maintained by the Agency."). In essence, the firm is being penalized for failing to keep contemporaneous records that it was under no obligation to maintain. Communication of this record-keeping requirement by the FNS would go a long way to ensuring compliance, and to prevent the unnecessary permanent disqualification of innocent store owners from the Food Stamp Program.

As to Criterion 4, requiring that "[n]either firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations," the record here does not establish any such involvement.[14] 7 C.F.R. § 278.6(i). Yet as discussed above, the record suggests that from its first assessment of plaintiff's eligibility for a CMP, the FNS erroneously assumed managerial involvement.

In addition, store manager Saleh avers in his affidavit that permanent disqualification would cause a severe hardship on the community. Citing FNS regulations, the ALJ held that "a civil money penalty in lieu of permanent disqualification cannot be imposed based on hardship to households in the area." ARO Decision, p. 4 (emphasis in original).

Although 7 U.S.C. § 2021(a) provides for a CMP in lieu of permanent disqualification where disqualification would cause hardship to food stamp households,[15] the regulations adopted by the Agency at section 278.6(f)(1) foreclose this exemption where disqualification is a result of a trafficking violation.[16] The FNS's failure to consider the hardship to food stamp households exception "deprive[s] food stamp beneficiaries of a statutory exception enacted for their benefit." *Ghattas*, 40 F.3d at 285; *Castillo*, 989 F.Supp. at 419. *C.f. Kim v. United States*, 121 F.3d 1269, 1275–76 (1997) (deferring to the Agency's statutory interpretation as reasonable).

Although the Second Circuit has upheld sanctions involving disqualifications, those cases involved different circumstances and a different regulatory scheme. *See Abdelaziz v. United States*, 837 F.2d 95 (2d Cir.1988) (holding that although the regulations were ambiguous, permanent dis-

14. As discussed in footnotes 7, 8, and 10, although the agency maintained in a 1998 notice of proposed rulemaking that Criterion 4 has already been changed in practice to mirror language in the statute, which allows a store to be eligible for a CMP even where a member of store management was aware of the trafficking, the record in this case suggests the FNS continues to apply the standard as written.

15. 7 U.S.C. § 2021(a) provides:
   Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has vio-

lated any of the provisions of this chapter or the regulations issued pursuant to this chapter....

16. Section 278.6(f)(1) provides:
   FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices. FNS may disqualify a store which meets the criteria for a civil money penalty if the store had previously been assigned a sanction. **A civil money penalty for hardship to food stamp households may not be imposed in lieu of a permanent disqualification.** (emphasis added).

qualification of a firm can apply personally to a store owner as well as against the corporate entity); *Lawrence,* 693 F.2d at 276–77 (upholding a one-year disqualification for violations involving the purchase of ineligible items with food stamps); *Willy's Grocery,* 656 F.2d at 27 (upholding a one-year disqualification following the criminal conviction of the store owner's husband for food stamp trafficking). The Second Circuit has not directly addressed the issue of a permanent disqualification sanction since the promulgation of the regulatory requirements at issue here. However, in a case strikingly similar to the one before the Court, the District of Connecticut was recently critical of the FNS's refusal to issue a CMP in lieu of permanent disqualification. *Castillo v. United States,* 989 F.Supp. 413 (D.Conn.1997). The court determined that Castillo, a vendor permanently disqualified for trafficking, had shown a likelihood that the court would reverse the Agency's decision. Castillo received a charge letter notifying him of two instances of trafficking involving his store. The letter referred to the criteria for establishing an effective policy to prevent violations, and purported to enclose the applicable regulations, although Castillo contended that no such regulations were enclosed. Castillo responded with a letter indicating that he attempted to operate his business in a legal manner and that he had recently terminated several employees. He also requested more proof concerning the alleged violations and indicated that if the violations could be proven, he would apply for a CMP. The Agency determined that the violations in fact took place, and that he was not eligible for the CMP because "he did not submit the required documentation as specified in the charge letter." *Id.* at 414. The Agency gave Castillo three weeks to submit additional information to be considered in reviewing its determination. Castillo responded with a letter reiterating his request for a CMP and providing additional information concerning his compliance with FNS regulations. Castillo's appeal was denied in part

because he did not provide the requisite documentation to prove his eligibility for a CMP. On appeal to the district court Castillo challenged only the Agency's refusal to grant a CMP in lieu of permanent disqualification. .

The court observed that Castillo had no record of previous violations, a store clerk had once refused to allow an Agency investigator to purchase ineligible items, and the two trafficking violations, committed by the same clerk, amounted to less than $200. The court also accepted Castillo's affidavit describing his clean record with the Agency and his averments about his store's training program. "Although [Castillo's] affidavit is not a model of clarity, it can fairly be read as, at least, an attempt to demonstrate that plaintiff had an effective compliance policy in place prior to the violations." *Id.* The court criticized the Agency for failing to articulate whether it weighed the size of Castillo's store in deciding the sufficiency of the documentation, and its reliance on "internal USDA policy guidelines" that require permanent disqualification for trafficking "regardless of whether or not the firm benefitted from the violation, or the owner or management of the firm had knowledge of the violation." *Id.* at 419. The court also was critical of language in the ARO's decision precluding consideration of the "hardship to households" exception for trafficking violations.

The *Castillo* court relied heavily on an Eighth Circuit decision that was equally critical of a permanent disqualification sanction imposed by the FNS. *See Ghattas,* 40 F.3d at 284–286. A clerk in a small grocery store was arrested after trafficking in food stamps on four separate occasions. The Eighth Circuit held that the FNS regulations applied to store owner Ghattas reflected a hostile attitude toward the imposition of a CMP in lieu of permanent disqualification. *Id.* at 284. The court held in part that the regulations were skewed to the disadvantage of small

businesses and thus, were arbitrary and capricious. *Id.* at 285–86.

It is true that several other District Courts in the Second Circuit have upheld FNS permanent disqualifications under the new regulations adopted under the Hunger Prevention Act of 1988. *See Almonte v. United States,* No. 98CV1597, 1999 WL 117997 (D.Conn. Feb. 22, 1999) (plaintiff failed to allege facts that would show irreparable harm, nor did plaintiff participate at the administrative level); *Muthana v. United States,* No. 98–CV–130, slip op. at 8 (W.D.N.Y. June 26, 1998) (unpublished decision) (plaintiff failed to produce "any evidence" of a compliance policy); *Junel Food Center Corp. v. United States,* No. 97 Civ. 7181, 1997 WL 634175, at *2 (S.D.N.Y. Oct. 15, 1997) (unpublished decision) (food stamp trafficking attributable to store where at least two of four instances of trafficking took place inside store); *Nagi v. United States,* No. 96 Civ. 6034, 1997 WL 252034, at *2 (S.D.N.Y. May 14, 1997) (unpublished decision) (Plaintiff "failed to allege, much less demonstrate," that the store had an effective policy and program.).

Those cases, however, are readily distinguishable. Unlike the store owner in *Castillo* and plaintiff Ahmed in the instant case, it does not appear from the decisions that the firm's representative submitted a sworn affidavit describing the store's compliance program and requesting a CMP in lieu of permanent disqualification. In a similarly distinguishable case, the Ninth Circuit in *Kim v. United States,* 121 F.3d 1269 (1997), upheld a permanent disqualification sanction where the plaintiff had neither requested a CMP nor provided any documentation to the FNS within the ten-day time limit.[17]

Therefore, considering the facts of this case, and relying on the District of Connecticut's reasoning in *Castillo* and the Eighth Circuit's reasoning in *Ghattas,* I determine that it is likely that the plaintiff will prove that the FNS's imposition of the sanction of permanent disqualification was unwarranted in law.

Finally, as the government pointed out during oral argument, if plaintiff had been eligible for a CMP in lieu of permanent disqualification the store would have been assessed the maximum CMP of $20,000, payable in 30 days. The enormity of this penalty as assessed against a small business that has, under its current ownership, committed only one violation of the Food Stamp Program could be considered arbitrary or capricious. *See Corder v. United States,* 107 F.3d 595, 598 (8th Cir.1997) (The almost universal imposition of a maximum penalty "is not the exercise of informed Agency discretion" and "is another example of implementing regulations that reflect a hostile attitude toward the alternative monetary sanction Congress enacted in 1988."). However, the imposition of such a penalty is not presently before this Court. As such, the Court will not rule on the appropriateness of this sanction.

## E. Irreparable Harm

██ In an affidavit submitted to the Court, plaintiff estimated that 50% of the store's gross revenue involved food stamp purchases. Plaintiff further averred that disqualification from the Food Stamp Program will force the store out of business. Based on these allegations, plaintiff has established irreparable harm. *See Morales,* 21 F.Supp.2d at 129 (loss of 60% of business can establish irreparable harm); *Castillo,* 989 F.Supp. at 417 (loss of 45% of business and allegation that store would

---

**17.** Other circuits have upheld FNS sanctions imposed following trafficking violations, without addressing the new regulatory scheme. *See Bakal Brothers, Inc. v. United States,* 105 F.3d 1085 (6th Cir.1997) (store did not request a CMP); *TRM, Inc. v. United States,* 52 F.3d 941 (11th Cir.1995) (store did not contest trafficking violation or request a CMP);

*Haskell v. USDA,* 930 F.2d 816 (10th Cir. 1991) (government entitled to summary judgment where store permanently disqualified following thirteen separate violations, including exchanging food stamps for cash and marijuana); *Freedman v. United States,* 926 F.2d 252 (3rd Cir.1991) (FNS imposed a CMP and plaintiff sought review of this sanction).

close establishes irreparable harm); *De La Nueces v. United States*, 778 F.Supp. 191, 194 (S.D.N.Y.1991) (allegation of loss of 50% of store's business and possibility that store may close establishes irreparable injury). *But see Junel Food Center Corp.* 1997 WL 634175, at * 2 (Even assuming that food stamps constitute a high percentage of plaintiff's sales, plaintiff "has not presented any evidence proving it would lose all of its business now attributed to food stamps.").

## CONCLUSION

Plaintiff has established irreparable harm and demonstrated a likelihood that he will prove that the sanction imposed by the Secretary was arbitrary or capricious. Therefore, plaintiff's request for a preliminary injunction (Dkt.# 3) is granted. The Food and Nutrition Service determination, as reflected in the November 24, 1998 order from the Administrative Review Officer disqualifying plaintiff from participation in the Food Stamp Program, is hereby stayed. The defendant is ordered to take all necessary steps to reinstate plaintiff's authorization to participate in the Food Stamp Program, pending final disposition of this action.

IT IS SO ORDERED.